The **STATE** of Ohio, Appellee,

v.

**DEMASTRY**, Appellant.

[Cite as *State v. DeMastry,* 155 Ohio App.3d 110, 2003-Ohio-5588.]

Court of Appeals of Ohio,
Fifth District, Fairfield County.

No. 02 CA 9.

Decided Oct. 17, 2003.

**114**

Joyce Anderson, Special Prosecutor, for appellee.

Summers & Vargas Co., L.P.A., William L. Summers, Edwin J. Vargas and Robert A. Ferreri, for appellant.

WISE, Judge.

{¶ 1} Appellant, Gary K. DeMastry, appeals from his judgment of conviction and sentence on multiple counts by the Court of Common Pleas, Fairfield County. The relevant facts leading to this appeal are as follows.

{¶ 2} Appellant is the former Sheriff of Fairfield County, Ohio, elected by popular vote in 1992 and reelected in 1996. In January 2000, appellant was indicted on over 300 counts related to his service as an elected official, including theft in office, money laundering, and tampering with evidence. Many of the counts pertained to appellant's activities surrounding a state audit of the sheriff department's Furtherance–of–Justice fund ("FOJ"), including allegations that appellant directed certain subordinates and other individuals to sign or prepare false affidavit forms and expenditure documents. Additional charges were filed in May 2000 and December 2000. Three hundred twenty-three counts were ultimately consolidated under one case number. Appellant pled not guilty to all charges. However, prior to the start of the trial in March 2001, the trial court severed 273 of the 323 counts, deferring them until a later time. The remaining 50 counts were presented to the jury in the present case. On December 11, 2001, the jury returned a verdict of guilty on 32 counts and not guilty on one count. It was a hung jury on the remaining 17.

{¶ 3} On January 18, 2002, the trial court issued its judgment of sentence. The court determined that none of the felonies should merge for sentencing purposes. The felony sentences were as follows. Appellant received a sentence of six years in prison for one count of engaging in a pattern of corrupt activity ("EPCA"), a felony of the first degree. Appellant also received a sentence of five years for one count of conspiracy to engage in a pattern of corrupt activity. Appellant was sentenced to four years each on 22 counts of evidence tampering or complicity in evidence tampering, felonies of the third degree. Appellant was further sentenced to 12 months each on four counts of theft in office or complicity to commit theft in office, (some of which were subject to the pre-July 1, 1996 Revised Code

provisions). Finally, appellant was sentenced to nine months for obstructing justice, a felony of the fifth degree.

{¶ 4} In regard to the misdemeanor convictions, appellant received the following sentences. On two counts of soliciting or receiving improper compensation, misdemeanors of the first degree, appellant was sentenced to six months on each. Also, on one count of filing a false financial-disclosure statement, a misdemeanor of the first degree, appellant was given a six-month sentence.

{¶ 5} All of the aforesaid felony and misdemeanor sentences were ordered to be served concurrently.

{¶ 6} On February 15, 2002, appellant filed a notice of appeal, and he herein raises the following 11 assignments of error[1]:

{¶ 7} "I. The appellant, as a first-time offender was denied the proper consideration of the minimum sentence, under R.C. 2929.11(A), when the court failed to demonstrate that it engaged in the required analysis, prior to mouthing the de minimus statutory language, in the negative, into the transcript.

{¶ 8} "II. The defendant-appellant was denied due process and a fair trial under section 10, Article I, Ohio Constitution and under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the trial court imposed cumulative punishments for the same offense in violation of R.C. 2941.25(A).

{¶ 9} "III. The trial court abused its discretion by failing to adhere to the statutory provision of Ohio R.C. 2929.11(B), which requires a sentencing court to impose a sentence, that is consistent with sentences imposed for similar crimes committed by similar offenders.

{¶ 10} "IV. The trial court erred in refusing to give separate instructions for each section of the complicity to tampering with evidence statute even though the Demastry [sic] was indicted on more than one section making the jury instruction overbroad.

{¶ 11} "V. The trial court erred in refusing to give separate instructions for each section of the tampering with evidence statute when the bill of particulars was specific as to the conduct of the defendant/appellate [sic] even though the Demastry [sic] was indicted on more than one section.

---

1. The first and second assignments of error set forth in the table of contents of appellant's brief are different. They read "I. The trial court erred by violating the provisions of R.C. 2929.13(B)(2)(a), which requires a recitation on the record of reasons for imposing a sentence of incarceration." and "II. Trial court erred in sentencing appellant under R.C. 2929.11 and 2929.14." We have quoted and addressed in this opinion appellant's first and second assignments of error as restated in bold print in the body of his brief.

{¶ 12} "VI.  Appellant's count 50 conviction for engaging in a pattern of corrupt activity and count 31 conviction for conspiring to engage in a pattern of corrupt activity must be overturned as a matter of law because predicate offenses must be overturned, there was improper 404(B) evidence permitted and the juror [sic] could have base [sic] their verdict on acquitted or hung counts.

{¶ 13} "VII.  The court erred in presenting the jury with misleading and confusing instructions and verdict forms, unreasonably denying requests to list the charges separately.

{¶ 14} "VIII.  The multiple erroneous evidentiary rulings by the trial judge, when combined with his infinite number of errors in instructing the jury, amounted to plain and prejudicial error.

{¶ 15} "IX.  Over the objection of the defense, the state was permitted to use other acts evidence to prove the case against appellant.  The trial court had severed another case for trial, as it had nothing to do with the charges that were to be tried in the fifty counts the state had been allowed to select, unilaterally for trial.  The state was allowed to use the allegations, in the second case, in their case in chief herein.

{¶ 16} "X.  The trial court erred in arbitrarily selecting fifty counts of a 328-count indictment against one defendant and delegating the authority of severance to the state of Ohio.

{¶ 17} "XI.  The trial court's jury voir dire was inadequate to ensure that the jury impaneled was fair and impartial."

I

{¶ 18} In his first assignment of error, appellant contends that the trial court failed to properly consider the statutory minimum-sentence presumption in rendering his sentence.[2]  We disagree.

{¶ 19} After the enactment of Senate Bill 2 in 1996, an appellate court's review of an appeal from a felony sentence was modified.  Pursuant to present R.C. 2953.08(G)(2): "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.  The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing.  The appellate court's standard for review is not whether the sentencing

---

2.  Appellant was also ordered to pay fines and make extensive restitution, including the costs of prosecution.  The specifics of these orders are not raised in this appeal.

court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶ 20} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶ 21} "(b) That the sentence is otherwise contrary to law."

{¶ 22} Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

{¶ 23} Appellant argues that he should have been entitled to the R.C. 2929.14(B) presumption that the shortest authorized prison term was appropriate, based on his lack of prior imprisonment or felony convictions. R.C. 2929.14(B) reads as follows:

{¶ 24} "Except as provided in division (C), (D)(1), (D)(2), (D)(3), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:

{¶ 25} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.

{¶ 26} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."

{¶ 27} Pursuant to R.C. 2929.14(B), when imposing a nonminimum sentence on a first-time offender, a trial court is required to make its statutorily sanctioned findings at the sentencing hearing. *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, paragraph two of the syllabus. In *State v. Edmonson* (1999), 86 Ohio St.3d 324, 715 N.E.2d 131, which is cited in *Comer*, supra, at 469, 2003-Ohio-4165, 793 N.E.2d 473, the Ohio Supreme Court gave the following guidance: "By contrasting this statute [R.C. 2929.14(B)] with other related sentencing statutes, we deduce that the verb 'finds' as used in this statute means that the court must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." Id. at 326, 715 N.E.2d 131.

{¶ 28} In this case, the trial judge first made the following general statement on the record: "This is not a whimsical process in which I just say, 'Well, today I

think I'm going to do something like this.' I have labored over this decision for many hours and days in trying to decide what I thought the Legislature was directing me to do." The trial judge subsequently stated the following:

{¶ 29} "The Court finds that this Defendant has not been sentenced to prison for any previous offense, but that community control sanctions or any lesser penalty than this Court has imposed for any of these offenses would demean the seriousness of that offense and would not adequately protect the public from such offenders—not simply this Defendant, but every sheriff in Ohio and every Prosecutor in Ohio who can be misled into thinking that public funds are slush funds for which there is no duty of accountability and an ability to lie when someone asks for accountability."

{¶ 30} Therefore, we find that the trial court made sufficient R.C. 2929.14(B) findings at the sentencing hearing such as to overcome the statutory minimum-sentence presumption for the various offenses. Accordingly, appellant's first assignment of error is overruled.

## II

{¶ 31} In his second assignment of error, appellant contends that the trial court unconstitutionally subjected him to cumulative punishments for the same offense, contrary to R.C. 2941.25. We disagree.

{¶ 32} R.C. 2941.25(A) reads as follows: "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

{¶ 33} The crux of appellant's argument is that he could not have been convicted of EPCA (Count G–50), conspiracy to engage in a pattern of corrupt activity (Count G–31), and complicity in tampering with evidence because "the only underlying predicates are the tampering with evidence counts."

{¶ 34} The jury's verdict on Count G–50 declares: "We find defendant Gary DeMastry Guilty of Engaging in a Pattern of Corrupt Activity between January 1, 1994 and December 31, 1999 with a criminal enterprise that included members of the Fairfield County Sheriff's Department which engaged in Theft in Office, Tampering with Evidence, Money Laundering, Obstructing Justice, and Soliciting or Receiving Improper Compensation, as charged in Count G–50."

{¶ 35} The jury's verdict on Count G–31 reads: "We find defendant Gary DeMastry Guilty of Conspiracy to Engage in a Pattern of Corrupt Activity between February 1997 and April 1999 with a criminal enterprise that included Mark Grimm, John Clark, Michael Schorr, Michael Norris, and Penny DeMastry which executed and submitted false affidavits to cover the theft of money from

the Sheriff's Furtherance of Justice account and the Sheriff's Law Enforcement Trust account, as charged in Count G–31."

{¶ 36} "It has been said that the vice of a multiplicitous indictment lies in the possibility of multiple punishments for a single offense in violation of the cumulative punishment branch of the Double Jeopardy Clause of the Fifth Amendment." *State v. Childs* (2000), 88 Ohio St.3d 558, 561, 728 N.E.2d 379, citing 1A Wright, Federal Practice & Procedure, Crim.3d (1999) 17, Section 142. However, in considering whether offenses are allied offenses of similar import, the Ohio Supreme Court has also stated that rather than analyzing the offenses in light of the specific facts of the case, we are to compare the elements of the offenses in the abstract. *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699.

{¶ 37} In regard to appellant's argument as to the relationship between the EPCA, conspiracy to engage in a pattern of corrupt activity, and the multiple tampering offenses in the present case, we note that the Ohio Supreme Court has indicated: "The *pattern* of corrupt activity is demonstrated by the fact that the [defendant] *committed* the predicate offense. The General Assembly has determined that if a defendant has engaged in two or more acts constituting a predicate offense, he or she *is engaging in a pattern* of corrupt activity and may be found guilty of a RICO violation." *State v. Schlosser* (1997), 79 Ohio St.3d 329, 335, 681 N.E.2d 911. (Emphasis sic.) Second, in regard to appellant's apparent suggestion that the EPCA and conspiracy to engage in a pattern of corrupt activity counts should have been merged, prior case law has established that " '[i]n the case of the offenses of engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity, the General Assembly has specifically provided for separate punishments for those crimes.' " *State v. Braswell*, Miami App. No. 2001CA22, 2002-Ohio-4468, 2002 WL 1998437, quoting *State v. Wilson* (1996), 113 Ohio App.3d 737, 748, 682 N.E.2d 5.

{¶ 38} We therefore find no merit in appellant's contention that he has been subjected to unlawful cumulative punishment. Appellant's second assignment of error is overruled.

### III

{¶ 39} In his third assignment of error, appellant argues that the trial court failed to follow statutory provisions for imposition of consistent sentences. We disagree.

{¶ 40} R.C. 2929.11(B) reads in pertinent part as follows: "A sentence imposed for a felony shall be * * * consistent with sentences imposed for similar crimes committed by similar offenders." As a general rule, our review on appeal is

limited to those materials in the record that were before the trial court. *In re McClain*, Licking App. No. 01CA92, 2002-Ohio-2467, 2002 WL 710434, citing *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500. Clearly, "[a]n obstacle to appellate review for consistency of individual sentences under the Ohio plan is the current lack of acceptable sentencing data and records from which to determine the mainstream sentencing range for specific offenses. Although the Ohio Criminal Sentencing Commission is apparently engaged in a pilot project to collect computerized data to assess consistency, the program has not yet been implemented." *State v. Ryan*, Hamilton App. No. C–020283, 2003-Ohio-1188, 2003 WL 1094003, quoting Griffin and Katz, Sentencing Consistency: Basic Principles Instead of Numerical Grids: The Ohio Plan (2002), 53 Case W.R.L.Rev. 14, 57.

{¶ 41} This court, however, has analyzed appellant's citations to the following cases set forth in his brief: *State v. Wedell* (Aug. 23, 2001), Cuyahoga App. No. 78760, 2001 WL 1001016 (theft of equipment—community control and restitution ordered); *State v. Bronkar* (Oct. 4, 2001), Muskingum App. Nos. CT2001–0003, CT2000–0033, and CT2001–0001 (theft of property or services in excess of $100,000—community control, 60 days in jail, and restitution ordered); *State v. Baire* (Oct. 11, 2001), Franklin App. No. 01AP–309, 2001 WL 1194974 (theft—eight months' incarceration and restitution of $34,800 ordered); and *State v. Lehman* (Dec. 12, 2001), Fairfield App. No. 01CA12, 2001 WL 1673729 (theft of $95,752 from ward's bank account—15 months' incarceration and restitution ordered). Of these cases, none involved a high number of counts or involved public funds as in the present case. Therefore, we find appellant's arguments under R.C. 2929.11(B) unpersuasive.

{¶ 42} Appellant's third assignment of error is overruled.

IV

{¶ 43} In his fourth assignment of error, appellant contends that the trial court erred in instructing the jury concerning the counts of complicity in tampering with evidence. We disagree.

{¶ 44} Ohio's complicity statute, R.C. 2923.03, reads in pertinent part as follows:

{¶ 45} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

{¶ 46} "(1) Solicit or procure another to commit the offense;

{¶ 47} "(2) Aid or abet another in committing the offense;

{¶ 48} "(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

{¶ 49} "(4) Cause an innocent or irresponsible person to commit the offense."

{¶ 50} In the present case, the relevant complicity-in-tampering-with-evidence counts were indicted as follows: Several counts in the range between G–9 through G–30 were under R.C. 2923.03(A)(1); Count G–1 was under R.C. 2923.03(A)(2); Counts G–40 through G–42 were under R.C. 2923.03(A)(4). The trial court chose to read a general instruction as to complicity in tampering with evidence, then gave examples of conduct that would not rise to the level of complicity. The trial court thereafter referred the jury to the verdict forms, each paragraph of which described each charge in detail and delineated the conduct that constituted the separate offense with which appellant was charged. The court told the jury to refer to these verdict forms and instructed that the jury must be unanimous in its finding on each fact supporting each offense in order to convict.

{¶ 51} Appellant in essence contends that the aforesaid method of jury instruction permitted the jury to consider all the statutory possibilities for each count of complicity when only one subsection of R.C. 2923.03(A) had been alleged as to each count. Appellant's trial counsel entered the following objection prior to the retirement of the jury:

{¶ 52} "Well, I guess—okay. I understand what the Court's ruling is. But it comes to a particular problem with the complicity to tampering when we're talking about different code sections depending on the counts.

{¶ 53} "So this jury has in front of it a general instruction that allows them to find Gary DeMastry guilty of complicity to tampering if any one of the (A) through (C) is proved. However, according to the indictment, only, for example, in count G–1 would the (A) section apply, and only, for example, in G–22 through 25 would the (C) apply. But the way these instructions are worded, they could find any of those in any of the code sections."

{¶ 54} Jury instructions are within the sound discretion of the trial court, and the court's decision will not be disturbed on appeal absent an abuse of discretion. *State v. Musgrave* (April 24, 2000), Knox App. No. 98CA10, 2000 WL 502688, citing *State v. Martens* (1993), 90 Ohio App.3d 338, 629 N.E.2d 462. Jury instructions must be reviewed as a whole. *State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792. A jury is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated. *State v. Roberts* (1980), 62 Ohio St.2d 170, 175, 16 O.O.3d 201, 405 N.E.2d 247. In this case, while the jury's task was arguably complicated by the number of counts, each complicity-in-tampering count itself was indeed clearly spelled out in

the verdict form, describing the particular conduct at issue. Furthermore, we find unpersuasive appellant's suggestion that the trial court's method of jury instruction caused him to be tried on charges not presented in the indictment. Cf. *Stirone v. United States* (1960), 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252.

{¶ 55} We therefore conclude that the trial court did not abuse its discretion in instructing the jury as to the counts of complicity in tampering with evidence. appellant's fourth assignment of error is overruled.

## V

{¶ 56} In his fifth assignment of error, appellant contends the trial court erred in instructing the jury concerning the counts of tampering with evidence. We disagree.

{¶ 57} R.C. 2921.12(A) reads as follows:

{¶ 58} "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

{¶ 59} "* * *

{¶ 60} "(2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation."

{¶ 61} The state presented the following tampering counts: G–2 (appellant's presentation of a false affidavit to investigators supporting a $100 FOJ expenditure allegedly made on November 7, 1994); G–3 (appellant's presentation of a false affidavit to investigators supporting a $100 FOJ expenditure allegedly made on November 10, 1994); G–4 (appellant's presentation of a false affidavit to investigators supporting a $56.94 FOJ expenditure allegedly made on December 16, 1994); G–6 (appellant's presentation of a false affidavit to investigators supporting FOJ check No. 385 allegedly made on February 27, 1998); G–7 (appellant's presentation of a false affidavit to investigators supporting FOJ check No. 380 allegedly made on February 27, 1998); G–43 (appellant's presentation of documents to the Grand Jury, including a list of names purportedly related to confidential informants, and certain logs and expense sheets).

{¶ 62} The trial court gave the following instruction[3] as to the tampering counts:

---

**3.** The final clause "and with a purpose to corrupt" was subsequently corrected by the trial judge to "or with a purpose to corrupt * * *, as per the statute."

{¶ 63} "In counts G–2, G–3, G–4, G–6, G–7 and G–43, the State charges Gary DeMastry with tampering with evidence.

{¶ 64} "A person commits the offense of tampering with evidence when the person knows that an official proceeding or investigation is in progress or is about to be or likely to be instituted, if the person makes, presents, or uses any record or document, knowing it to be false, with a purpose to mislead a public official who is or may be engaged in such proceeding or investigation, and with a purpose to corrupt the outcome of any such proceeding or investigation.

{¶ 65} "An official proceeding or investigation includes a financial or special audit by the Office of the Ohio State Auditor and a Grand Jury proceeding. Employees of the Ohio State Auditor's Office and grand jurors are public officials for the purpose of this offense."

{¶ 66} Appellant cites our decision in *State v. Giles* (Feb. 24, 1993), Ashland App. No. CA–1101, 1993 WL 49015, for the proposition that jury instructions are to be tailored to the facts of each case. However, in *Giles,* an arson case, we observed that "[t]he difficulty in determining the distinction between the three separate counts was compounded by the trial court reading all five names [of offerees contacted by the defendant to burn down his house] as to each count, as opposed to clarifying to the jury which counts involved which of the persons who testified." Id. We find no such difficulties in the jury instructions at issue in this case. Our review herein is guided by the principle that the purpose of jury instructions is " 'to clarify the issues and the jury's position in the case.' " *State v. Smith* (March 6, 1996), Lawrence App. No. 94CA37, 1996 WL 107430, quoting *Bahm v. Pittsburgh & Lake Erie Rd. Co.* (1966), 6 Ohio St.2d 192, 194, 35 O.O.2d 307, 217 N.E.2d 217. Accordingly, we find no demonstration of error prejudicial to appellant concerning the jury instructions for the multiple counts of tampering with evidence.

{¶ 67} Appellant's fifth assignment of error is overruled.

## VI

{¶ 68} In his sixth assignment of error, appellant contends that his convictions as to Count G–50 (EPCA) and Count G–31 (conspiring to engage in a pattern of corrupt activity) must be reversed as a matter of law. We disagree.

{¶ 69} Appellant's argument is based on his three-part proposition that (1) all of his complicity-in-tampering-with-evidence convictions must be reversed (assignment of error four); (2) all of his tampering with evidence convictions must be reversed (assignment of error five); and (3) the testimony of witness Tim Grandy caused reversible error under Evid.R. 404 (assignment of error nine). Assuming, arguendo, we were to accept appellant's additional premise that the

reversal of predicate offenses mandates reversal of any EPCA-based convictions (cf. *State v. Yeager* [Sept. 6, 2000], Summit App. No. 19593, 2000 WL 1257801), we have otherwise found no merit in appellant's above proposition. Accordingly, we reject appellant's contention that counts G–50 and G–31 should be reversed.

{¶ 70} Appellant's sixth assignment of error is overruled.

## VII

{¶ 71} In his seventh assignment of error, appellant argues that the jury instructions and verdict forms, taken as a whole, are misleading and confusing to the extent that all of his convictions must be reversed. We disagree.

{¶ 72} When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v. Wolons* (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Crim.R. 31(A) reads as follows: "The verdict shall be unanimous. It shall be in writing, signed by all jurors concurring therein, and returned by the jury to the judge in open court."

{¶ 73} The trial judge in this case chose to place all the counts on one verdict form and directed the jurors to consider each count separately. The jurors were then required to write "guilty" or "not guilty" in the space provided next to each count and to write in any special findings as required, such as dollar amounts at issue on certain counts. Each count on the verdict form repeated the elements of the charge and the particulars of the count. For example, Count G–6 was submitted to the jury as follows: "6. We find defendant Gary DeMastry _____ (insert 'Guilty' or 'Not Guilty') of Tampering with Evidence on or about February 27, 1998, by submitting to the State Auditor's Office a false affidavit dated February 27, 1998 regarding Check # 385 for the Sheriff's Furtherance of Justice Account, as charged in Count G6." This format was apparently in lieu of requiring the jurors to sign their names on 50 different forms. Appellant's trial counsel objected to the use of a single verdict form, although no authority was cited in support thereof. The trial judge replied that the court's chosen methodology "assists the jury and assists the process of all parties." Upon review, we are unable to find an abuse of discretion in the use of a single verdict form under the facts and circumstances of this case.

{¶ 74} Appellant otherwise challenges the jury instructions as "utterly confusing, misleading, sub-referencing, and * * * poorly organized." In support

of his position, appellant reiterates that the jury failed to reach a verdict in 17 of the counts, purportedly evincing jury confusion. Appellant also directs us, with minimal elaboration, to several pages of the transcript, wherein the jurors communicated a total of six questions to the court during their deliberations, one of which was merely the jury's notification of its pending deadlock on 17 counts. When raising on appeal the issue of jury instructions, an appellant is to provide reasons in support of his specific contentions, as required by App.R. 16(A)(7). *State v. Lawless* (July 12, 2002), Muskingum App. No. CT2000–0037, 2002 WL 1585846. Upon review, we find appellant's broad challenge to the jury instructions in this case fails to demonstrate an abuse of discretion warranting reversal by this court.

{¶ 75} Appellant's seventh assignment of error is overruled.

## VIII

{¶ 76} In his eighth assignment of error, appellant argues that the evidentiary rulings by the trial judge, in combination with his jury instructions, constituted plain error. We disagree.

{¶ 77} In order to prevail under plain error, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *State v. Baskin* (Nov. 9, 2000), Stark App. No. 1999CA00240, 2000 WL 1700039. Notice of plain error must be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus; *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 191, 616 N.E.2d 909.

{¶ 78} Appellant cites just one specific example of alleged evidentiary error: the testimony of Tim Grandy. Cf. App.R. 16(A)(7). We will address Grandy's role as a witness in our analysis of appellant's ninth assignment of error, *infra*. We are thus confronted with appellant's contention that the retired trial judge was essentially overwhelmed by the task of managing the complexities of this case. Making reference to the judge's "declining years," appellant charges that "it is apparent from the record that he would in almost all occasions follow the lead of the special prosecutors." Appellant makes further spurious reference to "the resolute way the trial Judge followed practically whatever the State of Ohio wanted him to do."

{¶ 79} We are of the opinion that such unsupported attacks against the integrity of the judiciary have no place in an appellate brief. See EC 8–6; *Disciplinary Counsel v. Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425. Moreover, in cases in the courts of common pleas, the Chief Justice of the

Supreme Court of Ohio has exclusive jurisdiction to determine a claim that a trial judge is biased or prejudiced. *Jones v. Billingham* (1995), 105 Ohio App.3d 8, 11, 663 N.E.2d 657. Common pleas litigants must challenge a trial judge's objectivity by using the procedure set forth in R.C. 2701.03. See *In re Baby Boy Eddy* (Dec. 6, 1999), Fairfield App. No. 99 CA22, 2000 WL 1410. Since only the Chief Justice or his designee may hear a disqualification matter, a court of appeals is without authority to void the judgment of a trial court because of bias or prejudice of the judge. *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 441–42, 8 O.O.3d 438, 377 N.E.2d 775. Appellant has provided us with no indication that he pursued a proper recusal request per R.C. 2701.03.

{¶ 80} Although appellant encourages us to invoke the doctrine of plain error, we are disinclined to do so when there is a dearth of documentation to support his claims of "multiple" and "infinite" erroneous rulings by the trial judge. Accordingly, appellant's eighth assignment of error is overruled.

## IX

{¶ 81} In his ninth assignment of error, appellant contends that the trial court erred in allowing the introduction of other-acts evidence against him during the state's case in chief. We disagree.

{¶ 82} Appellant specifically challenges the allowance of the testimony of Tim Grandy, an antiques dealer and former deputy sheriff. Grandy had been previously designated as an informant by appellant but testified at trial that he did not perform such a role. He recalled that appellant asked him repeatedly for a favor in the form of signing some blank cash receipt forms, so that appellant could "cover spent money" from the FOJ fund. Grandy stated that he had initially told appellant that he could not comply, as he had already told the Grand Jury that he had never received informant money from appellant. Nonetheless, according to Grandy, appellant arranged a meeting with him in a cemetery outside Lancaster, at which time Grandy signed 24 blank receipts. Grandy told BCI agents about the planned meeting, and they observed the encounter.

{¶ 83} Appellant's trial counsel twice objected to Grandy's testifying, arguing that the counts pertaining to falsified receipts obtained from Grandy had been severed from the 50 counts in the present case. In allowing Grandy to testify, the trial judge, rather than performing an Evid.R. 404(B) other-acts analysis, instead held that "the real issue is whether or not there is evidence that there is a false informant which was reported to the Grand Jury, which is a charge." During Grandy's testimony, the trial judge gave the following instruction to the jury: "Ladies and gentlemen, there is no charge in this case that asserts the use of false receipts from Mr. Grandy. This evidence is received for whatever significance it may have to you connected with the other charges."

{¶ 84} The admission or exclusion of evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 31 OBR 375, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402. Our task is to look at the totality of the circumstances in the particular case and determine whether the trial court acted unreasonably, arbitrarily, or unconscionably in allowing the disputed evidence. See *State v. Oman* (Feb. 14, 2000), Stark App. No. 1999CA00027, 2000 WL 222190. Furthermore, juries are presumed to follow and obey the limiting instructions given them by the trial court. *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1. Upon review of Grandy's testimony in light of the entire transcript, we are not persuaded that the trial court abused its discretion in allowing the disputed evidence with the aforesaid limiting instruction.

{¶ 85} Appellant's ninth assignment of error is overruled.

X

{¶ 86} In his tenth assignment of error, appellant argues that the trial court erred in ordering severance of the 50 counts tried in this case from the original 323–count indictment. We disagree.

{¶ 87} Crim.R. 14 reads as follows:

{¶ 88} "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."

{¶ 89} Our research indicates that there is abundant case law addressing a defendant's seeking severance of offenses. The general rule is that the defendant bears the burden under Crim.R. 14 to prove prejudice and that the trial court abused its discretion in denying severance. *State v. Coley* (2001), 93 Ohio St.3d 253, 259, 754 N.E.2d 1129, citing *State v. Torres* (1981), 66 Ohio St.2d 340, 20 O.O.3d 313, 421 N.E.2d 1288, syllabus. Here, however, appellant takes the far less common approach of arguing *against* the propriety of severance. Nonetheless, we maintain that the burden of showing prejudice still falls on appellant in such circumstances, as he filed the motion objecting to the trial court's pretrial decision to sever the first 50 counts. See *State v. Cartellone* (1981), 3 Ohio App.3d 145, 151, 3 OBR 163, 444 N.E.2d 68, quoting *State v. Perod* (1968), 15 Ohio App.2d 115, 120, 44 O.O.2d 249, 239 N.E.2d 100: " 'Absent some abuse of discretion, to be demonstrated by a clear showing of prejudice and the consequent denial of a fair trial, the [severance] determination is not subject to reversal.' "

{¶ 90} A trial court is vested with discretion to control judicial proceedings. *In re Guardianship of Maurer* (1995), 108 Ohio App.3d 354, 670 N.E.2d 1030. Appellant, at other points in his brief, posits that this case was of an "extraordinarily complex nature." We thus find no demonstration of prejudice against appellant by the trial court's decision to limit the state to prosecuting 50 counts in the present case. We additionally find unripe appellant's suggestion that double jeopardy was violated by the severance.

{¶ 91} Accordingly, appellant's tenth assignment of error is overruled.

## XI

{¶ 92} In his eleventh assignment of error, appellant argues that the trial court failed to provide a fair and impartial jury. We disagree.

{¶ 93} "[T]he selection and qualification of jurors are largely under the control of the trial court and, unless an abuse of discretion is clearly shown with respect to rulings thereon, they will not constitute ground for reversal." *State v. Trummer* (1996), 114 Ohio App.3d 456, 461, 683 N.E.2d 392, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301. A juror " * * * ought not to suffer a challenge for cause when the court is satisfied from an examination of the prospective juror or from other evidence that the prospective juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial." *State v. Duerr* (1982), 8 Ohio App.3d 404, 8 OBR 526, 457 N.E.2d 843, paragraph two of the syllabus.

{¶ 94} Appellant incorporates into his challenge to the voir dire process an argument suggesting the prejudicial influence of media coverage on the jury. Although he cites a number of cases in support of his position, including the well known *Sheppard v. Maxwell* (1966), 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 and *United States v. McVeigh* (W.D. Okla.1996), 918 F.Supp. 1467, appellant fails to cite a single recitation from the record revealing any potential juror impartiality or adverse pretrial publicity. See App.R. 16(A)(7).

{¶ 95} We therefore find that appellant has not contradicted the presumption of regularity accorded all judicial proceedings. See *State v. Robb* (2000), 88 Ohio St.3d 59, 87, 723 N.E.2d 1019, quoting *State v. Hawkins* (1996), 74 Ohio St.3d 530, 531, 660 N.E.2d 454. Appellant's eleventh assignment of error is overruled.

{¶ 96} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Fairfield County, Ohio, is hereby affirmed.

Judgment affirmed.

GWIN, P.J., and FARMER, J., concur.