[Cite as *State v. Taylor*, 2014-Ohio-5231.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO

     Plaintiff-Appellee

-vs-

RODNEY TAYLOR

     Defendant-Appellant

JUDGES:
Hon. W. Scott Gwin, P. J.
Hon. John W. Wise, J.
Hon. Craig R. Baldwin, J.

Case No. 2014 CA 00024


O P I N I O N


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
Pleas, Case No. 2013 CR 01242(B)


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     November 24, 2014


APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
PROSECUTING ATTORNEY
RENEE M. WATSON
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio 44702-1413

For Defendant-Appellant

ANTHONY T. KAPLANIS
701 Courtyard Center
116 Cleveland Avenue NW
Canton, Ohio 44702

*Wise, J.*

{¶1}. Defendant-Appellant Rodney Taylor appeals his convictions for felonious assault and other charges in the Court of Common Pleas, Stark County. The relevant facts leading to this appeal are as follows.

{¶2}. This case stems from an altercation in Alliance, Ohio, on the night of July 27, 2013, which resulted in the non-fatal shooting of Brennace Andrews and Malcolm Sampson.

{¶3}. On the aforesaid date, Ziara Dixon threw a party at her residence in the area of Webb Avenue and Reed Street in Alliance. More than twenty people attended, including Appellant Taylor, Diquante "Tink" Dickerson, Brennace Andrews, Malcolm Sampson, and Greg Sampson (Malcolm's brother). At some point, appellant and Andrews got into a verbal argument in the kitchen.

{¶4}. Following the argument, appellant and Dickerson left the party. Shortly thereafter, Andrews and the two Sampson brothers also left the house. While they were outside, appellant pulled up in a black Toyota. Appellant exchanged words with Greg Sampson and started shooting toward Andrews, who was approaching Sampson's car, a Chevrolet Malibu, in order to leave the party. As other party-goers fled the area, Andrews, Malcolm Sampson, and Greg Sampson jumped into Greg's Malibu. As they did, Dickerson also started shooting at them. One shot went through the rear window and struck Malcolm Sampson in the head. Another shot then struck Andrews in the leg when he tried to exit the car after the rear window was shattered.

{¶5}. Appellant was thereafter indicted by the Stark County Grand Jury on one count of felonious assault with a firearm specification (a felony of the second degree),

one count of discharge of a firearm on or near prohibited premises (a felony of the third degree), one count of having weapons while under disability (a felony of the third degree), and one count of inducing panic (a felony of the fourth degree). Appellant entered pleas of not guilty.

{¶6}. The matter proceeded to a jury trial on January 8-10, 2014. Appellant was ultimately found guilty on all counts.

{¶7}. Following a sentencing hearing, appellant was sentenced on January 24, 2014 to six years in prison for felonious assault and a consecutive three-year term for the gun specification. He was further sentenced to a consecutive three-year term for discharging a firearm on or near prohibited premises, another consecutive three years for having weapons under disability and a concurrent eighteen-month term for inducing panic. Appellant was thus sentenced for a total of fifteen years in prison.

{¶8}. Appellant filed a notice of appeal on February 14, 2014. He herein raises the following three Assignments of Error:

{¶9}. "I . PROSECUTORIAL MISCONDUCT DEPRIVED APPELLANT OF A FAIR TRIAL IN VIOLATION OF THE FIFTH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

{¶10}. "II. THE TRIAL COURT'S FINDING OF GUILTY OF FELONIOUS ASSAULT WITH FIREARM SPECIFICATION, DISCHARGING A FIREARM ON OR NEAR A PROHIBITED PREMISES, HAVING A WEAPON UNDER DISABILITY, INDUCING PANIC WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶11}. "III. THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL FOLLOWING BAD ACTS TESTIMONY FROM GREG SAMPSON THEREBY DENYING APPELLANT A FAIR TRIAL."

{¶12}. We will address the second assigned error first.

II.

{¶13}. In his Second Assignment of Error, appellant contends his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. We disagree.

{¶14}. In reviewing a claim based on the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶15}. Appellant was first convicted of felonious assault, which is set forth in R.C. 2903.11(A)(2) as follows: "No person shall knowingly *** [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶16}. Appellant was also convicted of one count of discharging a firearm on or near prohibited premises. R.C. 2923.162(A)(3)/(C)(2) states in pertinent part: "No person shall *** [d]ischarge a firearm upon or over a public road or highway." The offense as charged also contained a "substantial risk of physical harm to persons" criterion.

{¶17}. Appellant was further convicted of one count of having weapons under disability, in violation of R.C. 2923.13(A)(3), which reads: "Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if *** [t]he person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."

{¶18}. Finally, appellant was convicted of inducing panic, which is essentially set forth in R.C. 2917.31(A)(3)/(C)(3) as follows: "No person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by *** [c]ommitting any offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm." The offense as charged also contained a "physical harm to any person" criterion.

{¶19}. Appellant's main argument boils down to challenging the sufficiency of the testimony pointing to appellant as a shooter. As appellant points out, although police officers were able to recover bullet fragments at the scene and at the hospital, no significant ballistics testimony was presented by the State, nor was additional incriminating physical evidence provided. Furthermore, appellant did not make any incriminating statements regarding the shooting.

{¶20}. The record reveals that Diquante Dickerson, who testified for the State, admitted that both he and appellant briefly left the premises and returned with handguns

on the night of the party. Tr. at 210-211. Malcolm Sampson saw appellant display a gun in his pants while standing in the kitchen prior to the events outside. *See* Tr. at 257. Malcolm never saw appellant fire a gun and did not recall hearing any shots until after he had left the house and gotten inside the Malibu. In addition, neither Dickerson, Andrews, nor Ziara Dixon said they had seen the shooter, although Dixon had alleged in an earlier written statement that appellant had "pull[ed] up in a black unknown car shooting in the air." However, Greg Sampson testified that appellant pulled up in a black Toyota, asked him "is this what you all want?" and started shooting in Andrews' direction.

{¶21}. Upon review, viewing the evidence in a light most favorable to the prosecution, we hold there was sufficient testimony to support a conclusion by the jury, beyond a reasonable doubt, that appellant, while under disability, fired a handgun in Andrews' direction, over a public roadway, attempting to cause physical harm to Andrews and causing alarm to persons present at the party in the process, and that the pertinent offenses resulted in physical harm to two people.

{¶22}. In regard to appellant's "manifest weight" claim, we note our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be

exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717. In the case sub judice, the State does not deny in its response brief that conflicting evidence was presented to the jury. However, upon review of the record, we are not persuaded that the decisions of the jurors in assessing the evidence resulted in a manifest miscarriage of justice.

{¶23}. Appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. Appellant's Second Assignment of Error is overruled.

I.

{¶24}. In his First Assignment of Error, appellant argues he was deprived of a fair trial and due process of law based on alleged prosecutorial misconduct. We disagree.

{¶25}. A conviction will be reversed for prosecutorial misconduct only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. *State v. Benge,* 75 Ohio St.3d 136, 141, 661 N.E.2d 1019, 1996-Ohio-227. Furthermore, isolated comments by a prosecutor are not to be taken out of context and given their "most damaging meaning." *See Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431. Generally, a prosecutor's conduct at trial is not grounds for reversal unless that conduct deprives the defendant of a fair trial. *State v. Loza* (1994), 71 Ohio St.3d 61, 78, 641 N.E.2d 1082.

{¶26}. Appellant directs us to the prosecutor's cross-examination of Ziara Dixon, who was called as a court's witness pursuant to Evid.R. 614, without objection. *See* Tr. Vol. II at 286. The questioning is set forth as follows:

{¶27}. "Q. Do you know Rodney's family?

{¶28}. "A. Uh-huh.

{¶29}. "Q. Okay. I couldn't help but notice during the breaks and other times here during the day that you were with Rodney's family and friends here in the courthouse?

{¶30}. "A. Yeah. We all grew up together, went to school together, played sports together.

{¶31}. "Q. And did you come here to Court with them today?

{¶32}. "A. No. I came by myself.

{¶33}. "Q. You came here by yourself?

{¶34}. "A. Yes.

{¶35}. "Q. Okay. How long have you known Rodney and his family?

{¶36}. "A. I have known Rodney since elementary.

{¶37}. "Q. That's a pretty long time?

{¶38}. "A. Yeah.

{¶39}. "Q. And did you guys go to school together?

{¶40}. "A. Uh-huh."

{¶41}. Tr. Vol. II at 293-294.

{¶42}. Appellant then connects the above exchange to the prosecutor's closing argument. At that time, the prosecutor referred to the above exchange (Tr. at 389), then later stated to the jurors in his rebuttal portion of closing:

{¶43}. "Or perhaps, like Ziara, [some of the witnesses] spent the afternoon out with the Defendant's family, hanging out, carousing, doing whatever it was they were doing, so that her story was much different that the story she told the police the day of and the day after where she said I saw Rodney with a gun."

**{¶44}.** Tr. at 402.

**{¶45}.** Appellant maintains this deprived him of a fair trial, emphasizing the dearth of physical evidence pointing to him as the shooter, and the fact that only one witness testified to actually seeing appellant fire a gun. He urges that the prosecutor's reference to the witness, Dixon, "hanging out" and "carousing" with appellant's family was completely unsupported by the evidence.

**{¶46}.** We note appellant failed to object to the aforesaid alleged instance of prosecutorial misconduct. Error not raised in the trial court must be plain error in order to reverse. *State v. Johnson* (Nov. 19, 1998), Richland App. No. 98–CA–42, 1998 WL 818026, citing *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Id.* Plain error does not exist unless but for the error, the outcome of the trial would clearly have been otherwise. *State v. Nicholas* (1993), 66 Ohio St.3d 431, 613 N.E.2d 225.

**{¶47}.** It appears to us that the prosecutor was trying to respond to Dixon's deviation from her original statement to law enforcement indicating that appellant had fired a gun from the car. Upon review, assuming, arguendo, the remarks regarding Dixon's potential bias were improper, we are unpersuaded that they would have prejudicially affected appellant's substantial rights.

**{¶48}.** We therefore find no reversible error on the basis of prosecutorial misconduct.

**{¶49}.** Accordingly, upon review, appellant's First Assignment of Error is overruled.

III.

{¶50}. In his Third Assignment of Error, appellant contends the trial court erred in allowing the introduction of alleged prior "bad acts" evidence against him. We disagree.

{¶51}. The admission or exclusion of evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180. As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. Our task is to look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. *State v. Oman* (Feb. 14, 2000), Stark App.No. 1999CA00027. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

{¶52}. Evid.R. 404(A) provides that evidence of a person's character is not admissible to prove the person acted in conformity with that character. Evid.R. 404(B) sets forth an exception to the general rule against admitting evidence of a person's other bad acts. The Rule states as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. * * *."

{¶53}. Both instances in question occurred during the State's examination of Greg Sampson. While describing the argument in the kitchen on the night of the party, Greg unexpectedly testified: "It was a heated discussion or argument because on my

second day home [appellant] had pulled  a gun out on me and shot at me." Tr. at 225-226.

**{¶54}.** After defense counsel objected and moved for a mistrial, which was denied, the trial court stated as follows to the jury:

**{¶55}.** "Ladies and Gentlemen, you did hear an objection to a statement that was made by the witness in this case. The court has sustained the objection. I am granting a motion to strike that response. The response is to be completely disregarded by you, treated as though you never heard it; and you are not to consider it as evidence in this case nor in your deliberations during this case."

**{¶56}.** Tr. at 227-228.

**{¶57}.** Later, the prosecutor was questioning Sampson on re-direct about his decision to carry a gun after the incident, even though he was apparently violating his probation by doing so. When asked if he started carrying a gun after the shooting at the party, Greg stated: "Not exactly. Not until after my house was shot up during the morning of their arraignment."

**{¶58}.** Tr. at 243-244.

**{¶59}.** After defense counsel again objected and moved for a mistrial, which was denied, the trial court stated as follows to the jury:

**{¶60}.** "Okay. Ladies and gentlemen, I know it seems like I am telling you more about what not to consider than I am what to consider. But the last statement that was made by this witness has been stricken by the Court. Again, you are to disregard it. Treat it as though you had never heard it. You are to consider it not - it is not to be

considered as evidence in this case nor is it to be considered by you at all for any reason in your deliberation."

**{¶61}.** Tr. at 247.

**{¶62}.** We have frequently recognized that juries are presumed to follow and obey the limiting instructions given them by the trial court. *State v. DeMastry,* 155 Ohio App.3d 110, 127, 799 N.E.2d 229, 2003-Ohio-5588, citing *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1. Upon review, given the strength of Greg Sampson's other testimony, we find appellant has failed to demonstrate an abuse of discretion in regard to the evidentiary decisions of the trial court under Evid.R. 404.

**{¶63}.** Appellant's Third Assignment of Error is overruled.

**{¶64}.** For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Baldwin, J., concur.

JWW/d 1031