OPINION *Page 2 
{¶ 1} Appellant Timothy Grant appeals his conviction, in the Richland County Court of Common Pleas, for kidnapping and rape. The relevant facts leading to this appeal are as follows.
 {¶ 2} Shortly before dusk on November 26, 2001, the fourteen-year-old female victim in this case left her house in on Altamont Avenue in Mansfield to visit a nearby convenience store, the "Quick Check." After purchasing a soft drink and stopping at a nearby vending machine for some snack food, she started for home via South Diamond Street.
 {¶ 3} Shortly thereafter, a purple and maroon van drove up beside the victim. Two African-American males in the van attempted to talk to the victim. When the men asked her name, the victim made up the pseudonym "Ashley" and told them to leave her alone. The van eventually stopped; the passenger got out and grabbed the victim. The driver, who was described as taller and thinner than the passenger, opened the back door of the van from the inside, and the victim was forced in.
 {¶ 4} The van was then driven to an area behind a garage at 278 South Diamond. The men removed the victim from the van and took her near some bushes, where she was anally and vaginally raped by the heavyset man, while the taller man (the van driver) forcibly held her. During this time, the taller man also pulled out his penis and pressed it against the victim's mouth. After the two men left in the van, the victim went to the residence at 278 South Diamond and sought help. The victim was transported to the hospital later that night and examined for sexual assault. *Page 3 
 {¶ 5} About six months later, the victim was at a local public library one afternoon and saw two men she recognized from the attack on November 26, 2001. She also heard one of the men call her "Ashley," although the men quickly left the building. Otherwise, little progress was made for some time until police detectives matched, via the CODIS system, the DNA of William Miller to evidence from the rape kit. The victim identified Miller, via a photo array, as the heavyset man who had raped her. Detectives also learned that Miller had often associated with appellant. The victim thereafter picked appellant out of a second array as the taller man who had participated in the rape.
 {¶ 6} Appellant was thereafter arrested. On October 5, 2006, the Richland County Grand Jury indicted appellant on one count of rape, one count of unlawful sexual conduct with a minor, one count of kidnapping, one count of sexual battery, and one count of abduction.
 {¶ 7} The case proceeded to a two-day jury trial on March 22 and 23, 2007. The jury found appellant guilty of aiding or abetting the offenses charged in the indictment.
 {¶ 8} A sentencing hearing was conducted on March 26, 2007. The judge determined, inter alia, that the kidnapping and rape offenses in this case were not allied offenses. Appellant was ultimately sentenced to nine years in prison on the rape count, and eight years in prison on the kidnapping count, to be served consecutively. The sentences were ordered to be served concurrently with a prison sentence appellant was already serving. At the State's request, the remaining offenses were merged for sentencing purposes. *Page 4 
 {¶ 9} Following a separate classification hearing on April 2, 2007, appellant was determined to be a sexual predator.
 {¶ 10} On April 26, 2007, appellant filed a notice of appeal. He herein raises the following five Assignments of Error:
 {¶ 11} "I. DEFENDANT/APPELLANT WAS DENIED HIS FIFTH AMENDMENT RIGHT TO A FAIR TRIAL BY THE DENIAL OF ADMISSION OF TESTIMONY ABOUT A POLICE REPORT.
 {¶ 12} "II. THE COURT ERRED TO DEFENDANT/APPELLANT'S PREJUDICE BY DESIGNATING DEFENDANT/APPELLANT AS A SEXUAL PREDATOR.
 {¶ 13} "III. THE TRIAL COURT ERRED TO DEFENDANT/APPELLANT'S PREJUDICE BY FINDING A SEPARATE ANIMUS IN THE KIDNAPPING AND RAPE COUNTS.
 {¶ 14} "IV. DEFENDANT/APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 15} "V. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO DECLARE A MISTRIAL AS A RESULT OF ITS OWN CONDUCT."
 I. {¶ 16} In his First Assignment of Error, appellant argues the trial court erred and deprived him of his right to a fair trial by denying defense cross-examination pertaining to a police report about the incident in question. We disagree.
 {¶ 17} During the State's case-in-chief, Detective Ed Schmidt took the stand. During defense counsel's subsequent cross-examination of Detective Schmidt, a question was raised pertaining to information in a police report prepared by Patrolman *Page 5 
Justin Duncan, the first law enforcement officer on the scene on November 26, 2001. Through questioning about this report, defense counsel wanted to introduce Duncan's purported doubts about the believability of the victim's account of the incident in question.
 {¶ 18} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,180, 31 OBR 375, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402. However, "[h]earsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 802. Our task is to look at the totality of the circumstances in the particular case and determine whether the trial court acted unreasonably, arbitrarily, or unconscionably in allowing or disallowing the disputed evidence. SeeState v. Oman (Feb. 14, 2000), Stark App. No. 1999CA00027.
 {¶ 19} Evid.R. 803(8) provides as follows:
 {¶ 20} "Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, how-ever, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness." *Page 6 
 {¶ 21} Although Evid.R. 803(8) generally permits out-of-court statements in the form of records, reports, statements, or data compilations to be received in evidence, the Rule does not permit such a statement to be received in evidence if it, in turn, is based upon hearsay. State v. White (May 24, 1990), Montgomery App. No. 11565, citingWestinghouse Electric Corp. v. Dolly Madison Leasing FurnitureCorp. (1975), 42 Ohio St.2d 122.
 {¶ 22} Our redress of this issue is hampered due to the lack of a proffered copy of Patrolman Duncan's police report in the record. Nonetheless, upon review, we find no abuse of discretion in the trial court's curtailing of defense cross-examination of Detective Schmidt in this regard.
 {¶ 23} Accordingly, appellant's First Assignment of Error is overruled.
 II. {¶ 24} In his Second Assignment of Error, appellant contends the trial court erred in designating him a sexual predator. We disagree.
 {¶ 25} R.C. 2950.01(E)(1), as written at the time of the case sub judice, defined "sexual predator" as a person who "has been convicted of or pleaded guilty to committing a sexually oriented offense that is not a registration-exempt sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." In State v.Cook (1998), 83 Ohio St.3d 404, 700 N.E.2d 570, the Ohio Supreme Court determined that R.C. Chapter 2950 is remedial in nature and not punitive. As such, we will review appellant's assigned error under the standard of review contained in C.E. Morris Co. v. FoleyConstruction (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. Under this standard, judgments supported by some competent, *Page 7 
credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.Id. at syllabus.
 {¶ 26} Former R.C. 2950.09(B)(3) set forth the relevant factors a trial court was to consider in regard to the sexual predator issue:
 {¶ 27} "In making a determination under divisions (B)(1) and (4) of this section as to whether an offender or delinquent child is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 28} "(a) The offender's or delinquent child's age;
 {¶ 29} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 30} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 31} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 32} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 33} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders; *Page 8 
 {¶ 34} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 35} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 36} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 37} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
 {¶ 38} In the case sub judice, the female victim was fourteen at the time of the offense; appellant was thirty-two. Appellant had been convicted of a previous sex crime, involving a fifteen-year-old female who was a resident of a youth facility at which appellant was employed. Appellant had also served a six-month prison term in South Carolina for burglary. He had additional convictions for larceny, assault, domestic violence, shoplifting, illegal weapons possession, unlawful discharge of a firearm, disorderly conduct, and driving under suspension. Appellant had previously been placed in an outpatient sex offender treatment program, but he was terminated when a probation violation forced him to return to prison. Appellant had additional probation violations in 2004 and 2006. The trial court in the case sub judice noted that appellant had displayed or threatened cruelty in the commission of the present offense. *Page 9 
 {¶ 39} Upon review, we find the trial court considered the elements set forth in R.C. 2950.09(B)(3) and that there was competent, credible evidence to support the sexual predator findings made by the trial court at the classification hearing. We further find appellant fails to establish that the denial of his request for an updated forensic examination, to review his likelihood to re-offend, constituted an abuse of discretion. See State v. Eppinger (2001), 91 Ohio St.3d 158,743 N.E.2d 881.
 {¶ 40} Appellant's Second Assignment of Error is therefore overruled.
 III. {¶ 41} In his Third Assignment of Error, appellant maintains the trial court erred in finding a separate animus existed as to the kidnapping and rape counts. We disagree.
 {¶ 42} R.C. 2941.25 addresses multiple counts and provides as follows:
 {¶ 43} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 44} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 45} In State v. Ranee, 85 Ohio St.3d 632, 710 N.E.2d 699,1999-Ohio-291, the Ohio Supreme Court stated the test for determining whether crimes are allied offenses of similar import: "If the elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied *Page 10 
offenses of similar import.'" [Citations omitted.] Id. at 636,710 N.E.2d 699. Specifically, in State v. Logan (1979), 60 Ohio St.2d 126,14 O.O.3d 373, 397 N.E.2d 1345, the Ohio Supreme Court established guidelines to determine whether kidnapping and rape are committed with a separate animus so as to permit separate punishment under R.C.2941.25(B). The Court held that "[w]here the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions." Id. at paragraph (a) of the syllabus.
 {¶ 46} In State v. Hill (1992), 64 Ohio St.3d 313, 595 N.E.2d 884, the defendant and an accomplice forced a 12-year-old victim from a path near a store parking lot to a wooded area, where the victim was repeatedly beaten and raped, and finally strangled and set on fire. Although in that case the Court found that the kidnapping had continued after the rape, the Court found a "separate immediate motive or animus" for the defendant's various criminal acts. Id. at 332.
 {¶ 47} In the case sub judice, the victim testified that while appellant drove the van, the "other guy" (Miller), got out and grabbed the victim. Tr. at 103-105. Miller then "started holding [her] down so [she] couldn't get up or do anything at all." Id. Appellant then stopped the van and opened the door so Miller could force the victim in. Id. Appellant then drove the van to an alleyway and ultimately to the area behind the garage. Tr. at 106. Both appellant and Miller then physically pulled the victim from the *Page 11 
van toward some bushes, where they proceeded to forcibly pull down her pants and sexually assault her, as set forth supra.
 {¶ 48} Thus, the record reveals that the victim was forcibly removed from the sidewalk, secreted in a closed van to a secluded spot, and physically removed once the van was stopped. The rape events then took place at some nearby bushes, away from the van. As the trial court properly reasoned, there existed a separate restraint of the victim's liberty via the forced van ride which differed from the restraint incidental to her subsequent rape. Under these circumstances, we find sufficient evidence to demonstrate separate animus for convicting and sentencing appellant for aiding or abetting both kidnapping and rape.
 {¶ 49} Appellant's Third Assignment of Error is therefore overruled.
 IV. {¶ 50} In his Fourth Assignment of Error, appellant argues he was deprived of the effective assistance of trial counsel. We disagree.
 {¶ 51} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the *Page 12 
trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675, 693 N.E.2d 267.
 {¶ 52} Appellant first submits that his trial counsel was ineffective for failing to move for a mistrial and to object to testimony by Detective Schmidt that police linked appellant to the second perpetrator, Miller, based on information from a relative of Miller who worked at the jail. Tr. at 172, 180, 189. The Ohio Supreme Court has recognized that the failure to object is not a per se indicator of ineffective assistance of counsel, because counsel may refuse to object for tactical reasons. State v. Gumm (1995), 73 Ohio St.3d 413, 428,653 N.E.2d 253. Here, even assuming, arguendo, the testimony was based on impermissible hearsay, appellant's trial counsel was likely emphasizing the failure of the State to earlier track down appellant by way of DNA or other forensic method. We are unpersuaded that counsel's performance in this regard constituted unreasonable representation.
 {¶ 53} Appellant next urges that trial counsel was ineffective for not further challenging the victim's mother's failure to recollect at trial that she had once told detectives that appellant had followed the victim home after the library incident, when the victim's mother had apparently made such an earlier statement. Tr. at 214-215. However, in light of the totality of the evidence presented, we find the outcome of the trial would not have been different had counsel further pursued the discrepancy. Furthermore, as an appellate court reviewing a claim of ineffective assistance, we "must *Page 13 
keep in mind that different trial counsel will often defend the same case in different manners." State v. Samatar, 152 Ohio App.3d 311,787 N.E.2d 691, 2003-Ohio-1639, ¶ 88.
 {¶ 54} Finally, appellant maintains that trial counsel was ineffective for not proffering as a proposed exhibit Patrolman Duncan's police report, in which he purportedly questioned the believability of the victim. However, our review on appeal is limited to those materials in the record that were before the trial court. See, e.g., State v.DeMastry, 155 Ohio App.3d 110, 119-120, 799 N.E.2d 229, 2003-Ohio-5588, citing State v. Ishmail (1978), 54 Ohio St.2d 402, 377 N.E.2d 500. Appellant's argument relies on information dehors the record, and simply invites unwarranted speculation in the present direct appeal.
 {¶ 55} Appellant's Fourth Assignment of Error is therefore overruled.
 V. {¶ 56} In his Fifth Assignment of Error, appellant argues the trial court erred in failing to declare a mistrial, sua sponte. We disagree.
 {¶ 57} A party who fails to object at trial waives error on appeal relative to that testimony unless there was plain error. State v.Ballew (1996), 76 Ohio St.3d 244, 251, 667 N.E.2d 369. Our reading of appellant's present assigned error suggests he is actually arguing cumulative error. The doctrine of cumulative error provides that a conviction will be reversed where the cumulative effect of evidentiary errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not singularly constitute cause for reversal. *Page 14 State v. DeMarco (1987), 31 Ohio St.3d 191, 509 N.E.2d 1256, paragraph two of the syllabus.
 {¶ 58} In support of his argument, appellant generally directs to the assigned errors raised earlier in this appeal. Notwithstanding this Court's past reluctance to embrace cumulative error as grounds for reversal (see State v. Mascarella (July 6, 1995), Tuscarawas App. No. 93AP100075), we have reviewed the relevant record in this matter, particularly the testimony of the victim, and find reversible error has not been demonstrated for failure to declare a mistrial.
 {¶ 59} Appellant's Fifth Assignment of Error is therefore overruled.
 {¶ 60} For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Richland County, is hereby affirmed.
 By: Wise, J., Gwin, J., Hoffman, P. J., concurs separately. *Page 15