[Cite as *State v. Richardson*, 2018-Ohio-947.]

richarCOURT OF
APPEALS STARK
COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| ROJE RICHARDSON | : | Case No. 2017CA00063 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court
of Common Pleas, Case No. 2016
CR 2314


JUDGMENT:     Affirmed


DATE OF JUDGMENT:     March 13, 2018


APPEARANCES:

For Plaintiff-Appellee                          For Defendant-Appellant

JOHN D. FERRERO                          GEORGE URBAN
Prosecuting Attorney                          116 Cleveland Avenue NW, Suite 808
                                                            Canton, Ohio 44702
By: KRISTINE W. BEARD
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza South, Suite 510
Canton, Ohio 44702-1413

*Baldwin, J.*

**{¶1}** Defendant-appellant Roje Richardson appeals his conviction and sentence from the Stark County Court of Common Pleas on attempt to commit aggravated arson. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On January 6, 2017, the Stark County Grand Jury indicted appellant on one count of attempt to commit aggravated arson in violation of R.C. 2909.02(A)(1) and 2923.02(A)(1), a felony of the second degree, and one count of attempt to commit aggravated arson in violation of R.C. 2909.02(A)(2) and 2923.02(A), a felony of the third degree. At his arraignment on January 13, 2017, appellant entered a plea of not guilty to the charges.

**{¶3}** Subsequently, a jury trial commenced on March 20, 2017. The following testimony was adduced at trial.

**{¶4}** In December of 2016, Jennifer Cox was living on Harrison Avenue in Canton, Ohio with her four children. At trial, she testified that appellant lived with them from late April of 2016 until the beginning of November of 2016. Cox testified that she met appellant through an online dating site and that, in April of 2016, he told her that he needed a place to stay. At the time, the two were in a relationship that continued until they broke up in early November of 2016. Cox testified that she had reason to be afraid of appellant and, over objection, testified that he had made threats to her and was physically abusive to her. According to Cox, after appellant moved out of her residence, he "kept on texting me, wouldn't leave me alone." Trial Transcript at 161. Appellant also showed up uninvited at her residence.

{¶5} On December 2, 2016, Cox, who was home with her four children, had received some texts from appellant at approximately 9:00 p.m. stating that he would be there in a few minutes. Cox testified that she texted appellant back and told him to stay away and that she did not want anything to do with him. Appellant, however, kept texting. Cox testified that at around 9:00 p.m., appellant came to her house, knocked on her bedroom window and told her to open the door. She refused to do so. At approximately 10:45 or 11:00 p.m. on the same evening, a rock was thrown through Cox's bedroom window and landed on the kitchen floor. The rock was followed by a plastic juice bottle filled with gasoline and stuffed with a rag for a wick. The bottle landed beside Cox and her son on the bed. According to her, while the rag had been lit, it had burnt out. Cox, who indicated that she smelled gasoline, called the police at approximately 11:08 p.m and they responded to the scene.

{¶6} Cox further testified that after the incident, one of the keys to her shed, which contained her lawn mower and gasoline, was missing. She testified that appellant usually had the other key and that there was no damage to the shed.

{¶7} On cross-examination, Cox testified that appellant had told her that his name was Trey Roberts and that he had lied to her. She testified that she told appellant that he had to get out of her house in November of 2016 because he was harassing her with text messages and was physically abusive. When asked if appellant was the only person around that time who was threatening her, Cox responded "No." Trial Transcript at 189. She testified that after appellant moved out of her house, Tyrone Card moved in with her. She testified that due to a dispute between the two, charges were filed against Card who was not at Cox's house that night. Cox admitted that she did not see appellant

knocking on her door, but testified that she heard him and knew his voice. Cox testified that she did not answer appellant's later texts on December 2, 2017 because she was "scared for her life." Trial Transcript at 191. She testified that Tyrone Card could not have taken the key to her shed because the key was missing before Card moved into her house in November of 2016. She also testified that appellant must have had the key because, whenever she would kick him out of the house, he would sleep in the shed. Cox admitted the she did not tell this to investigators. Cox also admitted that she did not see anyone that night because her blinds were drawn, but that she thought the man outside was appellant.

{¶8} On redirect, Cox testified that at some point in mid-November of 2016, there was a physical altercation between herself and Tyrone Card and that she told the investigators about Card. Card was charged with domestic violence.

{¶9} The next witness to testify was Kenneth Wright, a fire investigator with the Canton Fire Department. He testified that the Canton Police Department called him out to the scene at approximately 11:43 p.m. because of the incendiary device found in the house. He testified that Cox's bed was damp and that there was a strong odor of gasoline in her room and throughout the house. He described the device as "a plastic bottle the size of a juice bottle …; and it had a, a clothe (sic) towel inside of it. It was filled about halfway with gasoline whenever I got there." Trial Transcript at 213. Wright collected the bottle and emptied out most of the gasoline into a gas can in Cox's shed while saving the rest for a sample. He testified that the rag had a burn mark on it. Wright sent the incendiary device to the State Fire Marshal's lab for analysis and DNA testing. He also collected the rock and had it sent to Bureau of Criminal Investigation for DNA analysis. No DNA was

recovered off of the rock. Wright also collected a lighter found outside of Cox's bedroom window and Cox's bedding. No fingerprints were located on the lighter. Wright testified that if the incendiary device had not gone out and had caught the bedding on fire, it would have created a substantial risk of physical harm to the house's residents and the structure. He testified that the residents would have been have been very badly hurt, if not killed.

{¶10} Wright further testified that, during his investigation, he learned that Tyrone Card was in jail on December 2, 2016. He never spoke with Card. He further located video showing that appellant and Robyn Williams were walking into a Taco Bell on Tuscarawas Avenue at 11:39 p.m. Wright testified that the Taco Bell was five to eight minutes away from Cox's house and a minute or two away from the Crown Motel.

{¶11} On cross-examination, Wright testified that when he spoke with appellant, appellant denied involvement. Wright admitted that he did not ask for DNA analysis on the lighter and did not test the padlock outside on Cox's shed. When asked, Wright testified that he asked Robyn Williams several times if she drove appellant, who does not have a driver's license or car, to Cox's house and she denied that she did. Williams had told Wright that she was with appellant on the night of December 2, 2017 at the Crown Motel. He agreed that it was not possible to walk from Cox's house to the Taco Bell and back in half an hour and that is why he was questioning Williams about driving appellant. He testified that he believed appellant was driven.

{¶12} Jayden Cox, Cox's 15 year old son, testified that he was home on December 2, 2016 along with his mother, siblings and a friend when he heard a "big crash." Trial Transcript at 251. He testified that he went to his window and saw someone opening up the shed with a key, putting something away, and then relocking the shed. He

agreed that because he saw the person opening and closing the shed door, he inferred that the person was using a key. When asked if he recognized the person, Jayden testified that the person had the same clothes and bag as appellant. He testified that person had been wearing a gray hoodie and had a black and red drawstring bag and that appellant usually wore the drawstring bag when he left the house. Jayden further testified that he recognized appellant's build. Jayden testified that the person "looked sort of like" appellant and that he believed the person to be appellant. Trial Transcript at 254. On cross-examination, he denied telling the police when they first came that night that the person was appellant. On redirect, he testified that he was sure that it was appellant based on what he saw and that he had indicated to his mother that he thought the person was appellant.

{¶13} Molly Jordan, who is a forensic scientist with the State Fire Marshal's Lab, testified that she was asked to analyze the evidence. Jordan swabbed the mouth and outside of the bottle and sent the swabs to the Bureau of Criminal Investigation for DNA analysis. She testified that the liquid in the plastic bottle tested positive for gasoline and that she also found gasoline on the bedding. On cross-examination, Jordan testified that she was not asked to look for fingerprints on the bottle and was not sent the lighter, the rock or the lock to the shed for testing.

{¶14} Hallie Dreyer, a forensic scientist with the Bureau of Criminal Investigation, testified that she received a swab from the outside of the bottle and one from the mouth of the bottle for testing. She testified that there was DNA from more than one individual on the mouth of the bottle and that an unknown male was detected. Dreyer received DNA collected from appellant and compared his DNA with that recovered from the mouth of

the bottle. She testified that she was not able to exclude appellant as a major source of the DNA and that appellant's donor match was one in a trillion unrelated individuals. On cross-examination, she admitted that she could not say when the DNA was deposited on the mouth of the bottle. The outside of the bottle had too many mixtures of DNA and was not suitable for comparisons.

{¶15} After the State rested and appellant's motion for a judgment of acquittal was overruled, appellant called Robyn Williams as a defense witness. She testified that she and appellant had been dating in December of 2016 and that, on December 2, 2016, she got off of work at 3:30 p.m., took a shower, and then went to see appellant at the Crown Motel. According to her, they left the motel at around 5:30 p.m. and went to the Game Stop and then she drove appellant to the Speedway in Kent, Ohio to purchase something off of Craig's List. The two then went to the Walmart and Dollar Tree in Brimfield, approximately 40 to 45 minutes away from Canton, Ohio. Williams testified that she and appellant went back to the Crown Motel at around 10:00 p.m. and that appellant was in and out of the room.

{¶16} Williams further testified that at around 11:30 p.m., they left to go to Taco Bell on Tuscarawas Avenue. When asked where appellant was at 9:00 that night, she testified that he was at the Walmart with her and that appellant could not have been knocking on a door in a house in downtown Canton on that night. She denied driving appellant to Cox's house and stated that, to her knowledge, appellant did not take her car and drive over there. Williams further testified that she had a device installed on her car that is called a Snapshot and was provided by to her by Progressive Insurance. The device records when car is idle and when it is moving. Williams testified that she looked

at the Snapshot report online and that it showed that her car was idle between 10:00 p.m. and 11:30 p.m. on December 2, 2016. The report was never printed off by Williams or provided to investigators.

{¶17} On cross-examination, Williams testified that on the way back from Walmart, appellant was looking at his phone and became agitated and really angry. Appellant told her to "Shut up, bitch." Trial Transcript at 321. Williams did not know why appellant was aggravated. When they got back to the Crown Motel, appellant was pacing and going in and out of the bathroom. Williams testified that she heard appellant mutter "If you fuck with me I'll kill you and your whole family." Trial Transcript at 323. Appellant then threw his phone on the bed and left at around 10:30 p.m. According to her, he was gone for about 30 minutes. William testified that when appellant returned, they went to Taco Bell and went inside rather than using the drive-thru, which was unusual. Later that evening at around midnight, appellant asked Williams to wash the clothes that he had been wearing. Appellant had told Williams that his name was Jay and did not tell her his real name until the day of his arrest.

{¶18} Appellant testified at trial in his own defense. He testified that he never took the key to the shed and that he never slept in the shed because he had OCD and was obsessed with cleanliness. Appellant testified that on the night on December 2, 2016, Williams picked him up at the Crown Motel at around 5:00 p.m. and drove him to Game Stop and then to Kent. He testified that they arrived back at the motel around 10:00 or 10:30 p.m. that night and that it was not possible for him to have been outside Cox's door at 9:00 p.m. because they were still in Kent. When asked about the text messages, he testified that he was a "bit of a prankster" and liked to push Cox's buttons and piss her off

a little. Trial Transcript at 354. According to appellant, he was texting Cox to see if she needed money to fix her car. Appellant admitted to having had a disagreement with Williams in the car. Appellant denied being anywhere near Cox's house and denied throwing a Molotov cocktail through her window.

{¶19} At the conclusion of the evidence and the end of deliberations, the jury, on March 21, 2017, found appellant guilty of both counts. The trial court, pursuant to a Judgment Entry filed on April 3, 2017, ordered that the two counts merge for sentencing purposes and sentenced appellant to a prison term of seven years for attempt to commit aggravated arson, a felony of the second degree. The trial court also found that appellant was an arson offender and ordered him to register in person, upon his release from prison, with the Sheriff in the county in which he resides pursuant to R.C. 2909.14.

{¶20} Appellant now raises the following assignments of error on appeal;

{¶21} I. APPELLANT'S CONVICTIONS WERE AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.

{¶22} II. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S OBJECTIONS TO TESTIMONY REGARDING PRIOR ACTS EVIDENCE.

{¶23} III. THE STATE OF OHIO'S ARSON REGISTRY SCHEME VIOLATES THE SEPARATION OF POWERS DOCTRINE, RENDERING IT UNCONSTITUTIONAL.

I

{¶24} Appellant, in his first assignment of error, argues that his convictions for attempt to commit aggravated arson were against the sufficiency and manifest weight of the evidence. We disagree.

**{¶25}** On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). *See also, State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

**{¶26}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159.

**{¶27}** Appellant was convicted of attempt to commit aggravated arson in violation of R.C. 2909.02(A)(1) and 2923.02(A) and attempt to commit aggravated arson in violation of R.C. 2909.02(A)(2) and 2923.02. R.C. 2909.09 states, in relevant part, as

follows: A) No person, by means of fire or explosion, shall knowingly do any of the following:

**{¶28}** (1)  Create a substantial risk of serious physical harm to any person other than the offender;

**{¶29}** (2)  Cause physical harm to any occupied structure;

**{¶30}** R.C. 2923.02 states, in relevant part, as follows: "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

**{¶31}** Appellant contends that his convictions were against the sufficiency and manifest weight of the evidence because there was a lack of scientific evidence that he was the one who committed the offenses and the testimony of the witnesses as to identity was not credible.

**{¶32}** At trial, Jennifer Cox testified that on December 2, 2016, she received text messages from appellant at around 9:00 p.m. indicating that he would be at her house in a few minutes. She testified that she told him to stay away. She testified that appellant responded by texting her to "tell your dude u got to get to the door ok." Trial Transcript at 171. Cox further testified that after she texted appellant that she would not answer the door, at 9:08 p.m., appellant responded "Y, is he scared lol." Trial Transcript at 172. Approximately two hours later, a jug containing gasoline was thrown through appellant's window. There was testimony at trial that appellant's DNA was on the lip of the bottle.

**{¶33}** In addition, Jayden Cox, Cox's son,  testified that when he looked out his window after hearing a loud crash, he saw a man who physically resembled appellant

opening up the shed, putting something inside the shed, and then relocking the shed. He inferred based on what he saw that the person had a key to the shed. According to Jayden, the neighbor's light was on in the back. He testified that that the person he saw had the same clothes and the same black and red drawstring bag usually carried by appellant. Jayden testified that he indicated to his mother that the person outside was appellant. Moreover, there was testimony at trial that the key to the shed was missing from where it was kept in Cox's house.

{¶34} As is stated above, Robyn Williams testified that on their way back from Walmart, appellant was looking at his phone and became aggravated and told her to shut up. When they got back to the motel, appellant was pacing and muttered "If you fuck with me I'll kill you and your whole family." Trial Transcript at 323. Williams testified that appellant then threw his phone on the bed and left at around 10:30 p.m. According to her, he was gone for about 30 minutes. There was testimony that it was possible to get from the motel to Cox's house and back and the Taco Bell within the time frame in which the offense is alleged to have occurred. Later the same evening, appellant asked Williams to wash the clothes that he had been wearing.

{¶35} Based on the foregoing, we find that viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant committed the offenses of attempt to commit aggravated arson beyond a reasonable doubt. We further find that the jury did not clearly lose its way in convicting appellant.

{¶36} Appellant's first assignment of error is, therefore, overruled.

II

{¶37} Appellant, in his second assignment of error, contends that the trial court erred in overruling his objections to testimony regarding prior acts evidence.

{¶38} The trial court has broad discretion in the admission and exclusion of evidence, including evidence of other acts under Evid.R. 404(B). *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 22. Unless the trial court has "clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere" with the exercise of such discretion. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). We have defined "abuse of discretion" as an "unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken." *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

{¶39} Evid.R. 404(A) provides that evidence of a person's character is not admissible to prove the person acted in conformity with that character. Evid.R. 404(B) sets forth an exception to the general rule against admitting evidence of a person's other bad acts. The Rule states as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶40} In the case sub judice, the State asked Cox if she had reason to be afraid of appellant, whether he threatened her and if he was ever physically abusive to her.

Appellant objected to the questions and Cox responded yes to the questions. At the conclusion of her testimony, the trial court instructed the jury as follows:

I'm going to give you what is referred to as a limiting instruction relative to some of the testimony that you heard: And that is that there was testimony relative to possible threats and abuse by the defendant towards this witness; ah, that testimony was allowed not to show the character of this defendant or that he acted in conformity with that character on all times relevant in the case, but rather to show motive and, ah, pattern of conduct. But that's the limited purpose and for no other reason was that allowed.

**{¶41}** Trial Transcript at 205.

**{¶42}** Cox's trial testimony about physical and emotional abuse was extremely brief and did not go into specific details about the incidents of abuse. The testimony was relevant to show appellant's motive in throwing the incendiary device into her home and, as noted by appellee, "provided the jury with context about [appellant's] pattern of conduct toward Cox." We additionally note the trial court gave the above limiting instruction to the jury. It is well-established that juries are presumed to follow and obey the limiting instructions given them by the trial court. *State v. Dorsey,* 5th Dist. Licking No. 11 CA 39, 2012–Ohio–611, ¶ 44, citing *State v. DeMastry,* 155 Ohio App.3d 110, 127, 2003-Ohio-5588, 799 N.E.2d 229, ¶ 84.

**{¶43}** Appellant's second assignment of error is, therefore, overruled.

III

**{¶44}** Appellant, in his third assignment of error, argues that Ohio's arson offender registry scheme violates the separation of powers doctrine and is unconstitutional.

**{¶45}** In the case sub judice, appellant did not argue before the trial court that Ohio's arson offender registry scheme violated the separation of powers doctrine and was unconstitutional.[1] Rather, appellant's counsel, at the sentencing hearing, stated to the trial court that appellant had signed the arson registration form and that "we do object to the classification of that and reserve the right to appeal that issue." Transcript from March 22, 2017 sentencing hearing at 447. No specific reason for objecting to the classification was provided to the trial court which, therefore, had no opportunity to hear and consider arguments relating to appellant's separation of powers argument.

**{¶46}** In *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus, the Ohio Supreme Court held: "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal."

**{¶47}** Accordingly, we find that the constitutional argument was not raised below and is deemed waived.

**{¶48}** Appellant's third assignment of error is, therefore, overruled.

---

[1] In contrast, in *State v. Dingus,* 4th Dist. Ross No. 16CA3525, 2017-Ohio-2619, 81 N.E.3d 513, which is cited by appellant, the specific issue of whether the arson officer registry scheme unconstitutionally violated the separation of powers doctrine was raised in the trial court.

{¶49} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

John Wise, P.J. and

Earle Wise, J. concur.