[Cite as *State v. Maddox*, 2022-Ohio-956.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

    Plaintiff-Appellee

-vs-

JASON JOHN MADDOX

    Defendant-Appellant

JUDGES:
Hon. Earle E. Wise, Jr., P. J.
Hon. W. Scott Gwin, J.
Hon. John W. Wise, J.

Case No. 2021 CA 00072

O P I N I O N

CHARACTER OF PROCEEDING:      Criminal appeal from the Court of Common Pleas, Case No. 2020 CR 01698

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      March 24, 2022

APPEARANCES:

For Plaintiff-Appellee

KYLE L. STONE
PROSECUTING ATTORNEY
VICKI L. DeSANTIS
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

For Defendant-Appellant

DONOVAN R. HLL
122 Market Avenue North
Suite 101
Canton, Ohio  44702

*Wise, John, J.*

{¶1}  Appellant Jason Maddox appeals his conviction on one count of Rape entered in the Stark County Court of Common Pleas following a jury trial.

{¶2}  Appellee is the state of Ohio.

### STATEMENT OF THE FACTS

{¶3}  For purposes of this Opinion, the relevant facts and procedural history are as follows:

{¶4}  On September 21, 2020, the Stark County Grand Jury Indicted Appellant Jason Maddox on three counts of Rape of an individual less than thirteen, in violation of R.C. §2907.02(A)(1)(b), felonies of the first degree, and three counts of Rape by force or threat of force, in violation of R.C. §2907.02(A)(2)(B), felonies of the first degree.

{¶5}  On February 8, 2021, Appellant filed a Motion to Determine the Admissibility of Statements, seeking a hearing from the court to determine the admissibility of statements that the alleged minor victim had made to the forensic interviewer at the Children's Network. The motion was made pursuant to the Ohio Supreme Court holding in *State v. Arnold*, 126 Ohio St.3d 290, 2010–Ohio–2742, 933 N.E.2d 775.

{¶6}  On March 18, 2021, the trial court held an "Arnold Hearing" pursuant to Appellant's motion. Prior to the commencement of that hearing, the parties informed the court that an agreement had been reached and a stipulated Exhibit 1 was submitted to the court, which contained a redacted transcript of the alleged victim's forensic interview that the parties agreed would be admissible at trial.

**{¶7}** On April 19, 2021, Appellant filed a Motion *in Limine* requesting the trial court to prohibit Appellee from mentioning or presenting testimony concerning Appellant's prior conviction and/or prior bad acts.

**{¶8}** On April 19, 2021, Appellant also filed a motion requesting an *in-camera* inspection of the case file of Stark County Department of Job and Family Services (SCDJFS) for the alleged victim.

**{¶9}** By Judgment Entry filed April 26, 2021, the court granted Appellant's request for the *in camera* inspection of SCDJFS's case file.

**{¶10}** On May 17, 2021, the jury trial in this matter commenced. The first witness to testify was the victim, A.B. A.B. testified she was 15 years old at the time of trial. (T. at 203). A.B. recalled that she was twelve in July, 2018, and her parents were divorcing. A.B. was going into seventh grade at Crenshaw Middle School. She stated that she first met Appellant Jason Maddox at her home while she was cooking and he was with her mom. (T. at 205). She recollected that her grandfather had just passed away. A.B. testified that Appellant came to her bedroom and told her to get on the floor. He then proceeded to pull her pants down and force his penis in her vagina. (T. at 207, 210). She drew a picture of her bedroom for the jury to show where the rapes occurred. A.B. testified Appellant told her not to tell anyone "because it will ruin my mom and it will ruin my family". (T. at 210). She said she did, however, tell a friend from school, Jasmine, what happened. She testified she could not call out for help, even though others were home, because Appellant put a pillow over her face. (T. at 211).

**{¶11}** A.B. testified that the second rape occurred in her closet while she was getting her clothes. She told the jury that Appellant pushed her on the ground, pulled

down her pants and forced his penis inside her. (T. at 211-213, 214). Again, he told her not to tell anyone.

**{¶12}** A.B. testified that the last rape occurred in her room. She testified that she tried to get away but could not, and he raped her again. A.B. testified she was scared. This time Appellant told her if she said anything he would hurt her family and "that he knew people". (T. at 215).

**{¶13}** A.B. testified she was alone with Appellant frequently. One-time Appellant bought her expensive tennis shoes and snacks. However, she often let her friend Jasmine wear the shoes because she did not want to wear them because they were from Appellant. (T. at 216-217). A.B. testified that she met Jasmine in seventh grade. (T. at 218). A.B. turned thirteen on October 13 of that year. (T. at 218). A.B. believed she told Jasmine after her birthday party that Appellant had been touching her. (T. at 218-219). Jasmine was supportive and asked if A.B. told her mom. (T. at 219). A.B. did not tell her mom then but told Jasmine she did because she was scared that Appellant would hurt her family. *Id.* A.B. testified she began to have an attitude with Appellant and then her mom and family. (T. at 220). She testified that she told her mom about a year and a half later in January, 2020. (T. at 221). A.B. explained that she finally told her mom because her mom's relationship with Appellant had ended. *Id.*

**{¶14}** A.B. then repeated that Appellant placed a pillow over her face on the first and third rape. (T. at 221). A.B. then identified Appellant in open court. (T. at 222).

**{¶15}** On cross examination, A.B. testified she did not recall Appellant using a condom. (T. at 229).

**{¶16}** The State then called A.B.'s friend, Jasmine W., who was fourteen at the time of trial. Jasmine testified she met A.B. in 2018, when they were in seventh grade. They became fast friends and spent time together outside of school. Jasmine went to A.B.'s thirteenth birthday party where she recalled seeing Appellant. (T. at 234). Jasmine also testified about the girls trading shoes and that it was A.B.'s idea. (T. at 235). Jasmine recalled that prior to A.B.'s 13th birthday she was usually really happy but then she was just sad. (T. at 236). Jasmine testified that after some prompting, A.B. told her she was sexually abused by her mom's boyfriend. (T. at 236).

**{¶17}** Melissa B. then took the stand. Melissa is the mother of A.B. and five younger children. (T. at 240). Melissa B. stated that she had known Appellant since 2002 or 2003, but that she had lived out of state for ten years. She moved to 1216 Ford Court in Canton in July, 2018. (T. at 245). Melissa stated that she reconnected with Appellant in June of 2018 through Facebook. She stated Appellant either came to her house or she would pick him up from his various jobs because he did not have a car. (T. at 247). When asked about going to his house, she recounted that she received a text from someone named Savannah, Appellant's girlfriend, which read, "This is Savannah, [Appellant's] girlfriend, I knew he'd been lying to me." (T. at 248). Melissa responded, "Well, [Appellant] said he didn't have a girlfriend; he lived with his mom". *Id.* Eventually, they spoke and met where Appellant's mom lived. (T. at 249). Melissa testified she told Savannah that she had been seeing Appellant for a while and that they smoked weed together and had sex a few times. (T. at 250). She then testified that she told Savannah that "there were times where I would pick him up and I thought we were getting weed, but he was getting coke ... ". *Id.* Defense counsel objected to this and the court sustained the objection and

instructed the jury to disregard the last comment. (T. at 250-251). Melissa testified she was intimate with Appellant and they had sex on occasion. (T. at 251). She testified there were times Appellant was alone with her children, such as when she picked up her mom to bring her home, or took a few of the kids with her, or when she went to the store for food, etc. (T. at 252-253). Melissa recalled that she started to notice a change in her daughter after she started seventh grade. (T. at 253). "It was mostly her behavior. She was talking back, arguing, trying to pick a fight about anything, but I thought it was because we had moved." *Id.* Also, Melissa relayed that her dad had recently died, she had left her husband, A.B. was turning thirteen, and she had started at a new school. (T. at 252-253). She testified that A.B. told her about the rapes in January or February of 2020. (T. at 254). Melissa stated that she was very angry, and that initially they decided not to tell anyone until A.B.'s dad was home. *Id.* He was a truck driver and only home once a month. *Id.* However, Melissa and A.B did tell Melissa's mother and sister. (T. at 255). Almost immediately after returning home from telling her mother and sister, the police showed up at the house because Melissa's sister called them. *Id.* Melissa told police they were trying to respect A.B.'s wishes to wait for her dad to get home first. (T. at 256). She testified a case worker came to the house and interviewed all the children. (T. at 257). Melissa also took A.B. to the Children's Network on February 14, 2020, for a forensic interview. (T. at 257).

{¶18} Melissa also described the layout of the house and that A.B. told her that Appellant had raped her three different times: once in the closet and twice in her bedroom. (T. at 260). She recalled that A.B. told her that the first time that Appellant raped her was when Melissa's dad passed away, around July 13, 2018. (T. at 260). She testified A.B.

was twelve at the time. (T. at 260-261). On cross-examination, defense counsel asked Melissa if she and Appellant had been sexually active. (T. at 263-264). Counsel also asked Melissa B. if she smoked weed with Appellant. *Id.*

**{¶19}** On redirect, Melissa testified that although she was not the one to call the police, she would have called had her sister not done so. (T. at 266).

**{¶20}** The State's next witness was Kimberlee Hetrick. Ms. Hetrick was employed through Stark County Children's Services in the intake department, and she described her job duties. (T. at 272-273). She was assigned this case and she testified that they received a report on their hotline concerning sexual abuse against A.B. by her mother's boyfriend, Jason. (T. at 275). She explained that the initial concerns were the disclosure of three separate incidents where Appellant forced his penis into A.B.'s vagina and placed a pillow over her face. (T. at 276).

**{¶21}** Ms. Hetrick testified that she had a telephone call with A.B.'s mother Melissa and scheduled a home visit in February, 2020, to meet A.B. and Melissa. (T. at 277). She also scheduled the forensic interview at the Children's Network. (T. at 278). Ms. Hetrick testified there were no witnesses to the rapes, but that A.B. had disclosed the abuse to her friend, Jasmine. *Id.* Ms. Hetrick also testified that A.B. had a medical exam and that her disposition of the case indicated allegations of sex abuse. (T. at 280-281). Ms. Hetrick testified there are three possible dispositions: unsubstantiated, substantiated and indicated. She testified indicated was the most common disposition. (T. at 282).

**{¶22}** Next, Detective James Lile with the Canton Police Department testified. Det. Lile testified the he was also a member of the multidisciplinary team at the Children's Network, and that he began his investigation of this case in January, 2020. (T. at 300).

He stated that he attended the forensic interview of A.B. and testified the allegations stemmed from July of 2018. (T. at 300-301). Det. Lile testified that A.B. disclosed she was raped several times by Appellant at her house in the bedroom and in the closet, and that he held a pillow over her face. (T. at 301-302). Det. Lile told the jury that he interviewed Appellant on February 21, 2020, and that Appellant told him that he had sex with A.B.'s mother Melissa, that he spent time at Melissa's house, and that he had become a male figure in the children's lives. (T. at 303). Appellant denied the allegations of sex abuse and told Det. Lile that it was A.B. who was aggressive towards him sexually and that he would push her away. (T. at 304). Appellant admitted to Det. Lile that he stayed with the children when Melissa's father passed away and she was away from the house. (T. at 304-305). When asked, Det. Lile affirmed that suspects often shift their conduct away from themselves onto the victim and/or minimize their role in the conduct. (T. at 305). Det. Lile confirmed the conduct occurred at A.B.'s house on Ford Court in Stark County, Ohio. *Id.* Det. Lile confirmed he spoke with Ms. Hetrick and also had a telephone conversation with A.B. (T. at 308-310).

**{¶23}** The last witness was Nurse Kathleen Nduati, MSN, APRN-CNP who works at the CARE Center at Akron Children's Hospital as a pediatric nurse practitioner. Nurse Nduati testified that from July, 2016, through November, 2020, she worked in Stark County where she evaluated children with concerns of sexual, physical abuse and neglect. (T. at 312-313). Following a recitation of her credentials, the court qualified Nurse Nduati as an expert without objection. (T. at 315). Ms. Nduati testified that she performed a physical evaluation of A.B. on February 14, 2020, who was fourteen at the time. (T. at 317). The redacted portion of the forensic interview was then played for the jury. (T. at

318). Nurse Nduati also identified State's Exhibit A2 as her report of A.B. (T. at 320-321). Out of the three diagnoses available to her (child sex abuse, no historical findings or inconclusive), Nurse Nduati made a diagnosis of child sex abuse. (T. at 320).  She testified, "During A.B.'s interview today, she disclosed being forced to have vaginal/penile sex on 3 separate occasions by a friend of her mom's, [Appellant], age 32, when she was the ages of 12 to 13. He also tried to force his penis in her mouth. He also grabbed her vagina on the outside of the clothing". Nurse Nduati stated that she found A.B.'s medical evaluation to be within normal limits, not unexpected due to the amount of time passed and the healing nature of the skin and genital tissue. (T. at 321). She explained that she only finds physical findings in about five percent of the cases.  (T. at 322-323). She further testified about 80-90 percent of diagnoses are based off of the history as told by the patient (T. at 323).

{¶24}  The defense did not call any witnesses.

{¶25}  Appellant made a motion for acquittal on the basis that the State did not prove the essential elements of the crimes alleged, which was denied. (T. at 329).

{¶26}  During closing arguments, the State revealed that A.B. collapsed on the floor outside of court. Defense objected and the court struck the comment and instructed the jury to disregard it. (T. at 354). The State also commented on Melissa's intimacy with Appellant and smoking marijuana. (T. at 355). No objection was raised. Defense counsel objected to another statement made by the prosecutor wherein he told the jury that A.B. was credible and that she did not make any of this up. (T. at 358). The court ordered this comment stricken. (T. at 358-359).

{¶27} During deliberations, the trial court was made aware of concerns raised by members of the jury. Based upon these concerns, which were addressed on the record, Appellee moved for a mistrial, Appellant opposed that motion, and the trial court denied the motion. (T. at 409). Additionally, based upon specific concerns raised by Juror 14, the Appellant requested that Juror 14 be excused, which Appellee opposed, and the trial court denied. (T. at 410). The trial court reread a portion of the jury instructions to address both of these concerns. (T. at 411-413).

{¶28} While the jury continued to deliberate, a written question was submitted to the court. (T. at 414-415). The court issued a written response to the jury which was not opposed by either party. (T. at 415-416). Thereafter, the court received a message from the jury that it was struggling to reach a unanimous decision. (T. at 417). In response, the court read the Howard Charge to the jury. (T. at. 419-420).

{¶29} Ultimately, the jury was able to reach a unanimous verdict, which found the Appellant guilty of Count I of the Indictment, and not guilty of Count II. (T. at 424).

{¶30} On May 21, 2021, Appellant appeared before the trial court for sentencing. The court imposed a sentence of ten (10) years to life on Count I. (Sent. T. at 6-9).

{¶31} On May 26, 2021, the court filed its Judgment Entries reflecting the Appellant's conviction and sentence.

{¶32} Appellant now appeals, raising the following errors for review:

<u>ASSIGNMENTS OF ERROR</u>

{¶33} "I. THE APPELLEE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION OF RAPE AGAINST APPELLANT UNDER 2907.02(A)(1)(b)(B), AND THE CONVICTION MUST BE REVERSED.

**{¶34}** "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED.

**{¶35}** "III. THE APPELLANT WAS DENIED A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT.

**{¶36}** "IV. THE APPELLANT WAS DENIED A FAIR TRIAL BY THE CUMULATIVE ERRORS BY THE TRIAL COURT.

**{¶37}** "V. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION."

**I., II.**

**{¶38}** We address Appellant's first and second assignments of error together, as they raise related issues of whether the judgment convicting Appellant of rape is against the manifest weight and sufficiency of the evidence

**{¶39}** On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

**{¶40}** On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶41}** Appellant herein was convicted of Rape, in violation of R.C. §2907.02(A)(1)(b) which states:

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

**{¶42}** "Sexual conduct" is defined by R.C. §2907.01(A):

> "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

**{¶43}** At trial, the jury heard testimony from several witnesses, including the victim. A.B.'s birth date is October 13, 2005. At trial, she testified to three incidents in

which Appellant engaged in vaginal intercourse with her. While A.B. did not provide specific dates when these acts occurred, she testified that her family moved back to Ohio in 2017 when she was eleven or twelve years old. (T. at 204). She further testified that she was twelve years old in July, 2018, the summer before she started seventh grade. (T. at 205-206). She recalled the first time Appellant raped her was around the time her grandfather passed away, which occurred in July, 2018. (T. at 206-207). As to each of the rapes, A.B. testified that Appellant forced her to the floor, pulled down her pants and forced his penis inside of her. (T. at 207-210; 211, 213-214; 214-215).

{¶44} A.B. testified that after the first rape, she told her friend Jasmine what had happened. (T. at 211). She stated that she met Jasmine in 7th grade and that Jasmine came to her 13th birthday party on October 13th. (T. at 218). A.B. testified that it was after her 13th party that she told Jasmine that Appellant had raped her. (T. at 219, 225).

{¶45} Jasmine testified that A.B. told her about the sexual abuse by her mom's boyfriend either at or shortly after A.B.'s thirteenth birthday. (T. 234-236, 238). She told Jasmine he was the guy from her birthday party. (T. at 236-237).

{¶46} A.B.'s mother, Melissa, testified that she reconnected with Appellant in June, 2018, after moving back to Ohio. (T. at 245). She testified that Appellant was alone with her children on several occasions. (T. at 252-253). She recalled that she started noticing behavioral changes in her daughter around the time she started seventh grade. (T. at 253). She testified that A.B. told her about the rapes in January or February, 2020. (T. at 254). She stated that A.B. told her that the first rape occurred right when her grandfather died which was July 13, 2018. (T. at 260). She testified that A.B. was twelve in July, 2018. (T. at 260-261).

**{¶47}** Further, there was physical evidence which corroborated the victim's testimony. Nurse Nduati testified to performing a physical exam on A.B. She explained her findings and her diagnosis of child sex abuse in this case. (T. at 317, 320-323).

**{¶48}** Additionally, the forensic interview of the victim was recorded, and the recording was played for the jury and admitted into evidence at trial.

**{¶49}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). We note circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks,* 32 Ohio St.2d 34, 289 N.E.2d 352 (1972), paragraph five of the syllabus. "[C]ircumstantial evidence may be more certain, satisfying and persuasive than direct evidence." *State v. Richey,* 64 Ohio St.3d 353, 1992-Ohio-44, 595 N.E.2d 915. It is to be given the same weight and deference as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

**{¶50}** In light of the foregoing, we find the testimony and evidence presented by the State provides sufficient evidence demonstrating that Appellant engaged in sexual conduct with A.B. when she was under the age of thirteen.

**{¶51}** Finally, notwithstanding the State's failure to affirmatively ask the victim whether she was the spouse of Appellant, the State nevertheless presented sufficient evidence that A.B. was not Appellant's spouse. *See State v. Muller*, 3d Dist. Defiance No. 4-11-09, 2012-Ohio-3530, ¶ 82 (" 'When the state fails to affirmatively ask the victim

whether she was the spouse of the offender, [a trier of fact may] infer from the testimony or circumstances, if sufficient, that a defendant and his victim are not married.' "), quoting *State v. Rainey*, 2d Dist. Montgomery No. 23070, 2009-Ohio-5873, ¶ 30, citing *State v. Brown*, 8th Dist. Cuyahoga No. 86577, 2006-Ohio-4584, ¶ 13. Here, A.B. testified that Appellant was her mother's boyfriend. A.B.'s mother testified likewise. Further, A.B. testified that she was twelve years old when the sexual abuse took place. The legal age to marry in Ohio is eighteen. R.C. §3101.01. Marriage of persons under the statutory age is void in Ohio. We therefore find, to the extent that Appellant argues lack of evidence or proof of the "not the spouse of the victim" element of the crimes, he cannot demonstrate prejudice because, based upon the stated age of his victim she was not of marriageable age in the state of Ohio. See R.C. §3101.01. There is no way that he could have asserted at trial that he was the spouse of A.B. *State v. Sloane*, 7th Dist. Mahoning No. 06 MA 144, 2009-Ohio-1175, ¶ 49

**{¶52}** Based on this evidence, reasonable minds could reach different conclusions as to whether the State proved beyond a reasonable doubt that A.B. and Appellant were not married to each other. *State v. Miller*, 3rd Dist. Logan No. 8-19-02, 2019-Ohio-4121, ¶ 31; *See also Muller* at ¶ 82.

**{¶53}** Appellant also argues that there were inconsistencies between A.B.'s testimony at trial and her forensic interview. While the jury may take note of inconsistencies and resolve or discount them accordingly, such inconsistencies alone do not render a conviction against the manifest weight or sufficiency of the evidence. *State v. Craig*, 10th Dist. Franklin App. No. 99AP-739, 2000 WL 297252, (Mar. 23, 2000), *quoting State v. Nivens*, 10th Dist. Franklin App. No. 95APA09-1236, 1996 WL 284714,

(May 28, 1996). In a case involving inconsistencies in the testimony of a seven-year-old child victim, this Court noted, "The jury was free to use their life experiences in assessing the testimony of a child verses an adult and draw its conclusion." *State v. Allen*, 5th Dist. Stark No. 2021CA00051, 2022-Ohio-268, ¶ 31.

**{¶54}** It was for the jury to determine the credibility of the testimony, and in this case, it is not patently apparent that the jury lost its way. Therefore, based on the evidence before this Court, we find the jury did not create a manifest miscarriage of justice in finding Appellant guilty of rape. Accordingly, we find Appellant's conviction is supported by sufficient evidence and is not otherwise against the manifest weight of the evidence.

**{¶55}** Assignments of Error I and II are denied.

### III.

**{¶56}** In his third assignment of error, Appellant argues he was denied a fair trial due to prosecutorial misconduct. We disagree.

**{¶57}** Appellant identifies several instances which he asserts arise to prosecutorial misconduct and otherwise deprived him of his due process rights due to: (1) testimony regarding Appellant's drug use, (2) evidence of prior specific instances of Appellant's sexual activity, (3) improper vouching for the victim's credibility during closing arguments, and (4) improper statements during closing arguments regarding the victim's actions after she testified.

**{¶58}** To address these arguments, we must first determine: (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected Appellant's substantial rights. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The inquiry is guided by four factors: (1) the nature of the remarks; (2) whether

an objection was made by counsel; (3) whether corrective instructions were given by the court; and (4) the strength of the evidence against the defendant. *Sidney v. Walters*, 118 Ohio App.3d 825, 829, 694 N.E.2d 132 (3d Dist.1997).

**{¶59}** Moreover, to the extent defendant did not object to allegedly improper statements, all error is waived but for plain error. *Slagle*, 65 Ohio St.3d at 604, 605 N.E.2d 916. Reversal is warranted where the improper statements "pervade the trial to such a degree that there was a denial of due process." *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993). When making this determination, we must consider the effect of any misconduct in the context of the entire trial. *Id.* "The touchstone of this analysis is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

**{¶60}** Initially, Appellant argues that "despite Appellant's motion *in limine*, the Appellee presented evidence of Appellant's prior bad acts by presenting evidence of his drug use." (Appellant's Brief at 22).

**{¶61}** Here, we find that Appellant's motion *in limine* addressed only certain statements made by Appellant in his interview with law enforcement. The motion was never supplemented, nor was a hearing ever requested. Rather, the parties stipulated to a redacted version of the forensic interview on the issue. (T. at 170).

**{¶62}** Further, a motion *in limine* is tentative and precautionary in nature, reflecting the court's anticipatory treatment of an evidentiary issue at trial. In deciding such motions, the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial. Finality does not attach when the motion is granted. *State v. Grubb* (1986), 28 Ohio St.3d 199, 201–202, 503 N.E.2d 142, 145.

**{¶63}** Appellant objects to statements made by both Detective Lile and Melissa B. about Appellant and Melissa having sexual intercourse.  Detective Lile's statements were made in response to a question concerning what Appellant had told him in regard to the nature of his relationship with Melissa.  Det. Lile stated "[h]e said that they had sex, intercourse, in his car, or in a car in the parking lot of Walmart when he was on break." (T. at 303).

**{¶64}** With regard to the testimony by Melissa B. that she and Appellant had "smoked weed" together and "had sex a few times", we find that such testimony was unsolicited by the State and was not objected to by defense counsel. (T. at 250). When Melissa made a further unsolicited statement that there were times when she "would pick [Appellant] up and I thought we were getting weed, but he was getting coke, and I didn't know that at first", defense counsel objected and the trial court sustained the objection. (T. at 250-251). The trial court then instructed the jury to disregard the comment.

**{¶65}** It is well-established that juries are presumed to follow and obey the limiting instructions given them by the trial court. *State v. Davis*, 5th Dist. Richland No. 14 CA 34, 2015-Ohio-889, 31 N.E.3d 1204, ¶54, citing *State v. DeMastry*, 155 Ohio App.3d 110, 127, 799 N.E.2d 229, 2003-Ohio-5588, ¶84; *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991); *Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). "A presumption always exists that the jury has followed the instructions given to it by the trial court." *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990), at paragraph four of the syllabus, rehearing denied, 54 Ohio St.3d 716, 562 N.E.2d 163. A curative instruction is presumed to be an effective remedy for the introduction of improper statements during the course of a trial. *See State v. Zeurn*, 32

Ohio St.3d 56, 61, 512 N.E.2d 585 (1987). Moreover, a jury is presumed to follow the court's curative instructions concerning improper comments. *See State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 93 (stating that the jury can be presumed to have followed the court's instructions to disregard testimony).

**{¶66}** We further find that on cross-examination, defense counsel returned to the testimony by asking Melissa:

> Q: Okay. And I'm not trying to embarrass, but you testified, I think to this, the two of you had been sexually active, correct?
>
> A: Correct.
>
> Q: In fact, you would go visit him on work breaks, correct?
>
> A: Sometimes, yes.
>
> Q. All right. And sometimes you smoked weed during those weed – those work breaks.
>
> A: Correct.

**{¶67}** (T. at 263-264).

**{¶68}** The invited error doctrine provides that "a party is not permitted to take advantage of an error that he himself invited or induced the court to make." *Davis v. Wolfe*, 92 Ohio St.3d 549, 552, 751 N.E.2d 1051 (2001). The doctrine of invited error precludes a defendant from making an affirmative and apparent strategic decision at trial and then complaining on appeal that the result of that decision constitutes reversible error. *State v. Wilson*, 5th Dist. Muskingum No. CT 2019-0039, 2020-Ohio-1217, ¶ 20; See also *State v. Doss*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, ¶7, *quoting United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir. 2003).

**{¶69}** We do not find that Appellant was unduly prejudiced by the references of his sexual activity with Melissa, as the fact that he was in a relationship with her was uncontroverted and was the reason he had access to A.B.

**{¶70}** Additionally, in defense counsel's own opening statements to the jury, he warned the jury, "Jason is not the best boyfriend in the world. Okay? You're going to hear he had a girlfriend at the time he's seeing [A.B.'s] mom. He's not relationship material, but he's not on trial for that. He is on trial for rape." (T. at 200).

*Rape Shield Law*

**{¶71}** Appellant argues for the first time on appeal that the trial court should have held a hearing under R.C. §2907.02, Ohio's Rape Shield Law.

**{¶72}** Upon review of the record, we find Appellant failed to pursue his statutory remedy under R.C. §2907.02(E) which provides:

> Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial.

**{¶73}** R.C. §2907.02(E); *Young* at ¶ 28.

**{¶74}** "[T]he Ohio Supreme Court has found that trial courts do not have a duty to *sua sponte* hold a R.C. 2907.02(E) hearing." *Id.* at ¶ 30, citing *State v. Acre*, 6 Ohio St.3d 140, 144, 451 N.E.2d 802 (1988), and *State v. Evans*, 8th Dist. Cuyahoga No. 85396, 2005-Ohio-3847. "A defendant may waive his statutorily granted right to such a hearing

by failing to make a timely request for it." *Id.*, citing *Evans* at ¶ 74, citing *Acre* at 144, 451 N.E.2d 802.

**{¶75}** Appellant did not request a hearing before or during the trial. Therefore, we find that Appellant "has waived his right to challenge the trial court's decision." *Young* at ¶ 31, citing *State v. Bugg*, 8th Dist. Cuyahoga No. 74847, 1999 WL 777866, 1999 Ohio App. LEXIS 4664 (Sept. 30, 1999); *State v. Murphy*, 8th Dist. Cuyahoga No. 107836, 2019-Ohio-4347, ¶¶ 98-100.

**{¶76}** Finally, Appellant argues that the prosecutor made improper statements during his closing arguments:

**{¶77}** First, the prosecutor informed the jury:

**{¶78}** "And I'm not sure that many of you would have noticed, but as [A.B.] walked out of the courtroom, she collapsed out onto the floor right outside of the court doors --- sobbing." (T. at 354).

**{¶79}** Counsel for Appellant objected and the court ordered the comments be stricken and then instructed the jury to disregard. *Id.*

**{¶80}** Next, the prosecutor improperly expressed his opinion that A.B. was a credible witness, wherein he told the jury:

**{¶81}** "And as you go back and you consider the video, the medical report, and any evidence and the testimony that was presented, keep that in mind, keep thinking: [A.B.] was very credible. There's no reason for her to make any of this up." (T. at 358).

**{¶82}** Defense counsel objected to the above statement as improper witness bolstering, and the trial court struck the statement. (T. at 358-359).

**{¶83}** " 'A prosecutor may comment upon the testimony and suggest the conclusion to be drawn by it, but a prosecutor cannot express his personal belief or opinion as to the credibility of a witness or as to the guilt of an accused, or go beyond the evidence which is before the jury when arguing for conviction.' " *State v. Manns,* 5th Dist. Richland No. 08 CA 101, 2009-Ohio-3262, 2009 WL 1900432, ¶ 20, citing *State v. Smith,* 12th Dist. Butler No. CA2007–05–133, 2008-Ohio-2499, 2008 WL 2168427, ¶ 7. *See also State v. Stober,* 3d Dist. Putnam No. 12–13–09, 2014-Ohio-1568, 2014 WL 1464226, ¶ 133, citing *State v. Hand,* 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 16.

**{¶84}** For example, a prosecutor "can bolster his own witnesses, and conclude by saying, in effect, 'The evidence supports the conclusion that these witnesses are telling the truth.' " *State v. Draughn,* 76 Ohio App.3d 664, 670, 602 N.E.2d 790 (5th Dist.1992). *See also State v. Jeffery,* 2d Dist., 2013-Ohio-504, 986 N.E.2d 1093, ¶ 20, citing *Draughn.* However, a prosecutor "cannot say, 'I believe these witnesses,' because such argument invades the province of the jury, and invites the jury to decide the case based upon the credibility and status of the prosecutor." *Draughn* at 670, 602 N.E.2d 790, citing *State v. Smith,* 14 Ohio St.3d 13, 470 N.E.2d 883 (1984). *See also Jeffery* at ¶ 20, citing *Draughn.*

**{¶85}** Here, upon review, while we find the prosecutor's statements to be troublesome, the trial court sustained the objections, instructed the jury to disregard the statements and later instructed the jury that closing arguments were not evidence and that the jury should not speculate on why the court sustained any objection. This limited the potential for prejudice from any misconduct. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶¶ 250, 253.

**{¶86}** Appellant's third assignment of error is overruled.

**IV.**

**{¶87}** In his fourth assignment of error, Appellant argues he was denied a fair trial by the cumulative errors by the trial court. We disagree.

**{¶88}** In *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, the Supreme Court of Ohio recognized the doctrine of cumulative error. Under the doctrine of cumulative error, "[s]eparately harmless errors may violate a defendant's right to a fair trial when the errors are considered together." *State v. Harris*, 2d Dist. Montgomery No. 19796, 2004-Ohio-3570, ¶ 40, citing *State v. Madrigal*, 87 Ohio St.3d 378, 397, 721 N.E.2d 52 (2000). "In order to find cumulative error, we first must find that multiple errors were committed at trial." *Id.* "A conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 223, citing *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.

**{¶89}** Here, Appellant bases his argument on the effect of errors concerning the failure of the trial court to conduct a Rape Shield hearing, the allowance of testimony as to Appellant's sexual relationship with Melissa B. and his use of marijuana and cocaine, and certain issues concerning the jury.

**{¶90}** This Court has previously addressed and found no harmful error as to the failure to hold a Rape Shield hearing and the unsolicited testimony concerning Appellant's relationship and with Melissa B. and his use of drugs.

*Juror issues*

**{¶91}** First, Appellant argues that the trial court erred in failing to *sua sponte* dismiss Juror 54 because his step-daughter worked at the prosecutor's office. When asked if he could be fair and impartial, Juror 54 said that he could be. (T. at 87). Appellant did not ask any questions of this juror and did not request that Juror 54 be excused for cause nor did he exercise a peremptory challenge.

**{¶92}** Whether to disqualify a juror for cause is "a discretionary function of the trial court * * * [not reversible] on appeal absent an abuse of discretion." *State v. Smith*, 80 Ohio St.3d 89, 105, 684 N.E.2d 668, 685 (1997) citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301, syllabus. "[T]he trial judge saw and heard" the prospective jurors and could evaluate their responses. *State v. Allen* (1995), 73 Ohio St.3d 626, 629, 653 N.E.2d 675, 681. We find no abuse of discretion. See *State v. Allard* (1996), 75 Ohio St.3d 482, 493–496, 663 N.E.2d 1277, 1287–1289. Furthermore, defendant waived any potential error by failing to challenge the prospective jurors at trial. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus, vacated on other grounds by 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1156.

**{¶93}** Appellant also argues that the trial court erred in not dismissing Juror 14 for two separate reasons: (1) during deliberations she disclosed that she was struggling because she had an uncle who was convicted of sexual assault against his youngest daughter, and (2) a statement she made concerning the jury discussing if " 'We're going to imprison this man for life,' blah, blah, blah, blah, blah." (T. at 403). Juror 14 stated that her experience did not impact her ability to be fair and impartial. (T. at 404, 406-407). She explained that she was not even close with that side of her family and that it was just

something she heard about from her mother. (T. at 407). The State moved for a mistrial based on her statements that the jury was considering punishment as part of their deliberations. (T. at 409). Counsel for Appellant opposed the motion for mistrial. Id. The trial court denied the motion and re-read the instructions to the jury that related to punishment. Counsel for Appellant then requested that Juror 14 be removed based on her having family members who were both a perpetrator and a victim of the crime alleged. (T. at 410). The trial court overruled the motion to excuse her, finding that "she clearly indicated that the facts are very different and that she absolutely said she could be fair to the Defendant and gave the Court no indication to the contrary." (T. at 411).

**{¶94}** Based on the foregoing, we find no abuse of discretion.

**{¶95}** Finally, Appellant argues the trial court erred in not granting a mistrial based on Juror 14's statements. As stated above, counsel for Appellant opposed the State's motion for mistrial and under the invited error doctrine, this Court finds that Appellant cannot now try to take advantage of that which he previously opposed.

**{¶96}** Where we have found that the trial court did not err, cumulative error is simply inapplicable. *State v. Carter*, Stark App. No. 2002CA00125, 2003-Ohio-1313 at ¶ 37. To the extent that we have found in this case that claimed error did not rise to the level of plain error, we conclude that the cumulative effect of such claimed errors is also harmless because taken together, they did not materially affect the verdict. *State v. Leonard*, 104 Ohio St.3d 54, 818 N.E.2d 229, 2004-Ohio-6235 at ¶ 185.

**{¶97}** Appellant's fourth assignment of error is overruled.

**V.**

**{¶98}** In his fifth assignment of error, Appellant argues that he was denied the effective assistance of counsel. We disagree.

**{¶99}** A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306, 750 N.E.2d 148 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687, 104 S.Ct. 2052. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 693 N.E.2d 267 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St. 3d 136, 141–42, 538 N.E.2d 373 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396, 358 N.E.2d 623 (1976), *vacated in part on other grounds*, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978).

**{¶100}** "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, 2014 WL 296002, ¶ 48, quoting

*Bradley* at 142, 538 N.E.2d 373, citing *Strickland* at 691, 104 S.Ct. 2052. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.*, quoting *Bradley* at 142, 538 N.E.2d 373 and citing *Strickland* at 694, 104 S.Ct. 2052.

**{¶101}** Appellant herein maintains trial counsel was ineffective for failing to challenge Juror 54 for cause, failing to request a mistrial, and failing to object to inadmissible hearsay and evidence violative of Ohio's Rape Shield Law.

**{¶102}** For the reasons discussed in addressing the previous assignments of error, we find Appellant's claims to be without merit, and counsel cannot be deficient for failing to raise meritless claims. Appellant's fifth assignment of error is overruled.

**{¶103}** For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Stark County, Ohio, is affirmed.


By: Wise, John, J.

Wise, Earle, P. J., and

Gwin, J., concur.



JWW/kw 0311